STATE of Wisconsin, Plaintiff-Respondent,

WISCONSIN ASSOCIATION OF LAKES, INC., Intervening Plaintiff,

v.

TOWN OF LINN, Defendant-Appellant.

VILLAGE OF WILLIAMS BAY, Defendant-Co-Appellant.†

Court of Appeals

*No. 95–3242. Submitted on briefs August 12, 1996.—Decided October 9, 1996.*

(Also reported in 556 N.W.2d 394.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David W. Schlitz* of *Davison, Mulligan & Schlitz, Ltd.* of Lake Geneva. On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *Charles H. Bohl* and *John P. Spector* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Joanne F. Kloppenburg*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

ANDERSON, P.J. The Village of Williams Bay (the Village) and the Town of Linn (the Town) appeal from the same order for partial summary judgment enjoining the Village from applying or enforcing its parking ordinance which restricts parking at its public boat launch facility for nonvillage residents and the Town from applying or enforcing its public boat launch fee ordinance, in violation of WIS. ADM. CODE § NR 1.91. Because the Wisconsin Department of Natural Resources (DNR) substantially complied with § 893.80(1), STATS.,[1] and because the DNR's authority extends to the shore when it exercises its authority to insure free public access to the waters of the state, as required by the public trust doctrine, we affirm the trial court's order as it relates to the Village.

We further conclude that the trial court was without competency to decide the Town's challenge to the constitutionality and the applicability of WIS. ADM. CODE § NR 1.91 because the Town failed to serve the joint committee on review of administrative rules (J CRAR), pursuant to §§ 227.40(5) and 806.04(11), STATS. We therefore affirm the trial court's order partially granting the State's summary judgment motion and granting full injunctive relief to the State as it relates to the Town.

Both the Village and the Town are adjacent to Geneva Lake. Geneva Lake is located in Walworth County and is a navigable lake which covers approximately 5262 acres. There are approximately 5000 private boats moored or docked on Geneva Lake

---

[1] Section 893.80, STATS., has been amended by 1995-96 Wis. Act 158, § 17. The changes do not affect our analysis. All statutory references are to the 1993-94 statutes.

at public and private marinas and at private residences. There are approximately 150 parking spaces at public boat launching facilities which are provided by four municipalities adjoining the lake and represent the only developed sites for the nonriparian public to access the lake. Written agreements between the DNR and the four Geneva Lake communities covering public access expired on April 30, 1994.

The Village owns and operates one public boat launching facility which provides access to Geneva Lake. The Village provides thirty-nine parking spaces, but reserves fourteen of these spaces for residents only. The Village traffic code allows only vehicles with resident stickers to use the fourteen resident parking spaces, and any nonresidents who park in the reserved parking spaces are issued tickets. The Village ropes off the launch to nonresidents when the nonresident parking spaces are full, even if resident spaces are available. In addition, the Village does not allow vehicles with trailers to park on its streets.

The Town owns and operates two public boat launching facilities which provide access to Geneva Lake. There is a portable toilet at each of the Town's boat launch facilities and no permanent attendant. The Town's boat launch fees in 1994 for nonresidents were in excess of the fees prescribed under WIS. ADM. CODE § NR 1.91(11),[2] and residents were not charged a fee. The Town has notified nonresidents that they must pay

---

[2] For example, if the Town had a permanent attendant and toilet facilities, under WIS. ADM. CODE § NR 1.91(11), it could charge $5.50 for a resident or nonresident boat under twenty feet long or $40-$120 for a nonresident season pass. Under the Town's ordinance, the fee was $26/weekday or $39/weekend for a nonresident boat between seventeen and twenty feet long or $150 for a nonresident season pass (limited to the first 100

the full posted fee charged by the Town or be subject to a $50 fine.[3] The Town submitted two incomplete applications for approval of its proposed boat launch fees, pursuant to § NR 1.91(11)(e).

On April 1, 1994, the revised administrative rules, WIS. ADM. CODE §§ NR 1.90-1.93, governing public boating access to the state's waters, took effect.[4] In an April 29, 1994, letter regarding Geneva Lake's public boating launch revenues/expenses supplied to the DNR, Thomas Thoresen, deputy administrator in the DNR's enforcement division, responded that "[w]ith the expiration of the past agreement and code revision, we will expect all communities to comply with the revised code or face possible legal action by either private citizens and/or the Department of Justice." Thoresen also noted the availability of financial

applicants and to boats under eighteen feet long). The Town's residents were not charged a boat launching fee.

[3] At each of the Town's two facilities, five parking spaces are posted as DNR spots and nonresidents who park in those spaces may pay the fees under the administrative code without receiving a $50 ticket. However, the DNR has not approved the higher fees charged for the non-DNR spots under WIS. ADM. CODE § NR 1.93, in effect prior to April 1, 1994, or WIS. ADM. CODE § NR 1.91(11)(f), in effect since April 1, 1994.

[4] WISCONSIN ADM. CODE §§ NR 1.91-1.93 are the result of a six-year statewide boating access policy revision process. Both public and municipal officials were invited to participate and provide input on the proposed rules through a series of workshops, seven informational hearings and six public hearings. The rules included fees for use of public boat launch facilities. The fees were based upon a statewide comparison of costs required to operate and maintain the facilities. After revisions by the legislature, the Natural Resources Board adopted the rules, as revised, and referred them to the legislature. The rules became effective on April 1, 1994.

assistance if the launch fees failed to cover the costs of operating the launch facility.

Despite repeated attempts by DNR representatives to obtain compliance with the public boating access revisions, the Village refused to eliminate its reserved parking spaces and the Town declined to comply with the fee provisions of the boat launching access code. Thereafter, the DNR referred the matter to the Department of Justice (DOJ) for prosecution.

On August 18, 1994, a complaint was filed against both the Village and the Town for each municipalities' "unreasonable practices which exclude boats from the free use of the water of the state in violation of Wis. Admin. Code § NR 1.91, Sec. 30.77(1)(b), Stats., and Wis. Const. art. IX, § 1." In November 1994, the State moved for judgment on the pleadings.[5] The trial court determined that the State substantially complied with the notice of claim statute and that the DNR, not local municipalities, was authorized to regulate access through parking regulations at launching sites. The trial court further concluded that it had no jurisdiction to address the Town's challenge to the validity of § NR 1.91, and that as a matter of law, the Town's boat launching fees were unreasonable. Accordingly, the trial court granted the State's injunction barring the Village and the Town from enforcing their respective ordinances.[6] Both the Village and the Town appeal.

---

[5] The defendants also filed a motion to sever the State's claims against them, which was denied on January 23, 1995. There was also a motion to intervene by the Wisconsin Association of Lakes, Inc., which was joined as an intervening plaintiff on February 21, 1995.

[6] The trial court's order only granted the first component of the injunctive relief requested by the State. The second

The Village and the Town argue that the trial court erred by granting the State's motion for summary judgment. We review a motion for summary judgment using the same methodology as the trial court. *M & I First Nat'l Bank v. Episcopal Homes*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995); § 802.08(2), STATS. That methodology is well known, and we will not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *M & I First Nat'l Bank*, 195 Wis. 2d at 496-97, 536 N.W.2d at 182; *see also* § 802.08(2). Although summary judgment presents a question of law which we review de novo, we still value a trial court's decision on such a question. *M & I First Nat'l Bank*, 195 Wis. 2d at 497, 536 N.W.2d at 182. As the material facts are not contested, only issues of law remain to be determined.

## VILLAGE OF WILLIAMS BAY

The Village first argues that the trial court erred in holding that the State substantially complied with the notice and claim provisions of § 893.80(1), STATS. The Village contends that it only received a telephonic communication that the DNR had referred the Village to the DOJ for prosecution and that the DOJ sent no written correspondence to the Village prior to initiating the suit. We disagree with the Village's characterization of the facts, and instead look to the

component, the repayment of money by the Town which represented the amount paid above the fees allowed under state law, was left to be addressed in further proceedings. Accordingly, we remand this issue to the trial court.

trial court's analysis and finding of substantial compliance.

Section 893.80(1), STATS., provides that "no action may be brought or maintained against . . . political corporation, governmental subdivision or agency thereof" without notice. The statute applies to all causes of action, not just those in tort or those for money damages. *DNR v. City of Waukesha*, 184 Wis. 2d 178, 191, 515 N.W.2d 888, 893 (1994). Only substantial compliance with the notice statutes is required. *Id.* at 198, 515 N.W.2d at 896.

The statute has two requirements. First, a claimant must present the municipality with "written notice of the circumstances of the claim signed by the party . . . ." Section 893.80(1)(a), STATS. However,

> [f]ailure to give the requisite notice shall not bar action on the claim if the [municipality] had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the [municipality].

*Id.*

■

The State contends that in the months before the complaint was filed, the Village was aware of the DNR's position that the reserved parking was illegal and that the DNR had referred the Village to the DOJ for prosecution. We agree. The Village was aware that the prior boating access agreement expired on April 30, 1994, and that the revised administrative rules governing boating access were in effect as of April 1, 1994. Arguably, the State's claim of noncompliance by the Village originated on May 1, 1994. In fact, LaMarr Lundberg, the Village president, admitted during his

deposition that at the April 27, 1994, Geneva Lake Use Committee meeting, the DNR and DOJ representatives informed the committee that all parking spaces must be available to the general public and that reserved parking constituted discrimination.[7] It is disingenuous for the Village to now assert complete ignorance to the State's claim regarding the reserved parking at public access sites.

Further, it is evident from the affidavit of Thoresen, the deputy administrator of the DNR enforcement division who also served as the chairperson of the DNR's boating opportunities and access team, that the Geneva Lake communities, including the Village, were actively involved throughout the development of the revised access code and consistently shared their opposition to the proposed changes to the parking sites with the DNR. After the April 1, 1994, effective date of the revised rules, the Geneva Lake communities, including the Village, were informed of the prospect of legal action if they refused to comply with the new rules at two separate meetings held on April 27 and May 4. In addition, Thoresen clarified the DNR's position in his April 29, 1994, letter: all communities must "comply with the revised code or face possible legal action by . . . the Department of Justice."

In a letter dated May 17, 1994, the Village informed the DNR that it adopted, under protest, the

---

[7] Lundberg stated in his deposition that the date was April 28, 1994. However, according to the April 13, 1994, Geneva Lake Use Committee minutes, the next meeting was set for April 27, 1994. Accordingly, we accept April 27, 1994, as the correct date.

fee schedule set forth in WIS. ADM. CODE § NR 1.91(11).[8] The adoption was contingent upon a satisfactory resolution of ten issues between the DNR and the Village, including "[r]ecognition of or noninterference with the ability of municipalities to reserve and allocate parking spaces in their owned or leased parking lots for residents and senior citizens." The letter further "advised" the DNR that if it refused to address these issues, then the Village would take further action, including the repeal of its current fee schedule and the enactment of a more accurate fee schedule.

Thoresen responded in a letter dated June 17, 1994. In the letter he stated:

> Historically, the Department has had numerous complaints about the exclusion of the general public from Geneva Lake. The record is clear, at public facilities around Geneva Lake there were/are restrictive fees and other prohibited acts which denies public use of either public facilities or access to public waters through such restrictions as: high launch fees, limiting the use to local residents only, or other fee provisions that discriminate against the general public from use at public facilities. Attached you will find several citizen complaints that we have received. . . . The Department has attempted to balance through the rule revision process the needs of both communities and the general public who use the lake. . . .
>
> . . . .

---

[8] Although it is unclear from the record, it would appear that the Village's May 17, 1994, letter was in response to Thoresen's April 29 letter, the meeting with DNR representatives on May 4, 1994, and resulted from the May 17, 1994, Geneva Lake Use Committee meeting.

(2) To allow exclusive use of public facilities by a
certain group not designated by state or federal law
(i.e., the Americans with Disability Act)
discriminates against other public use and is illegal.
When the code was developed, it was clear that
equal standards were to be applied (except for the
fee differential) and the general public was not to be
excluded or discriminated from use (ss. NR 1.90(1)
and NR 1.91(2)(i), Wis. Adm. Code).

. . . .

(10) . . . There must, however, be some acceptance
by the village that the Department is carrying out
its mandated responsibility in trying to uphold the
public's rights and interests. There should not be
discrimination at public facilities to gain access to
public waters. The Department has been more than
patient in trying to help the communities along in
gaining compliance with the overriding public
responsibility to protect public resources and
public's use of those resources.

Based upon the foregoing, we conclude that the Village
was aware of the State's claim and was not prejudiced
by the State's failure to comply with the particularities
of § 893.80(1)(a), STATS.

Second, a claimant must present the municipality
with "[a] claim containing the address of the claimant
and an itemized statement of the relief sought . . . ."
Section 893.80(1)(b), STATS., *amended by* 1995-96 Wis.
Act 158, § 18.[9] Under subsec. (b), the claim must: "1)
identify the claimant's address; 2) contain an itemized

---

[9] Section 893.80(1)(b), STATS., has been amended by 1995-96
Wis. Act 158, § 18, effective April 13, 1996. The amendment
moved the 120-day time limitation for disallowance from para.
(b) to subsec. (1g). The change does not affect our analysis.

438

statement of the relief sought; 3) be submitted to the city clerk; and 4) be disallowed by the city." *City of Waukesha*, 184 Wis. 2d at 197-98, 515 N.W.2d at 895. Two principles help determine the sufficiency of a claim under subsec. (b): (1) the notice must provide the municipality with the information necessary to decide whether to settle the claim, and (2) the notice must preserve bona fide claims. *Id.* at 198, 515 N.W.2d at 895-96.

The statute first requires that a notice of claim contain the address of the claimant. All of the correspondence between the DNR and the Village contained the DNR's address. Thus, the first requirement is satisfied.

Second, the claim must contain an itemized statement of the relief sought. Also, a request by the claimant for the municipality "to attain compliance with the DNR regulation" must provide the municipality with sufficient information to decide whether to settle the claim prior to litigation. *See Id.* at 199, 515 N.W.2d at 896.

Here, Thoresen's April 29, 1994, letter explicitly stated the DNR's expectation that the municipality would comply with the revised code or face possible action by the DOJ. Also, the June 17, 1994, letter reiterated previous statements that the exclusive use of public facilities by a certain group is illegal and the general public was not to be excluded from use of these facilities. These letters clearly define the equitable relief sought and therefore satisfy the second statutory requirement.

Third, the notice of claim must be "presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . . ." Section 893.80(1)(b), STATS. The key is that the claim be

presented to a proper representative, whether that be the clerk, the city attorney or another more appropriate individual. *See City of Waukesha*, 184 Wis. 2d at 199-200, 515 N.W.2d at 896.

Here, the correspondence was submitted to Lundberg, the Village president. Although this does not follow the letter of the statute, it is clear that Lundberg forwarded all the relevant information to and discussed the notice of claim with the Village Board and the Village Attorney, John Andrews. In fact, the board directed Andrews to compile a report to investigate the charges by the DNR that the Village was discriminating by reserving parking spaces for Village residents. In order to preserve an otherwise bona fide claim, we conclude that the State substantially complied with the requirement of presenting the notice of claim to the appropriate party. *See id.*

Finally, the claimant must wait until the municipality disallows the claim before it can commence the action in circuit court. Section 893.80(1)(b), STATS. Failure of the municipality to disallow the claim within 120 days is considered a disallowance. *Id.* Here, the State did not wait 120 days after sending its last letter dated June 17, 1994, before filing the complaint. Therefore, if the Village did not disallow the claim, then the State failed to comply with the statute. *See City of Waukesha*, 184 Wis. 2d at 200, 515 N.W.2d at 897.

The State contends that certain actions and letters by the Village made it clear that the Village had disallowed the claim. The State points to:

(1) [t]he Village's continued enforcement of its illegal parking restrictions in June;

(2) the Village of Williams Bay's president's May 17, 1994, letter demanding '[r]ecognition of noninterference with the ability of municipalities to reserve and allocate parking spaces . . . for residents;'

(3) the Village president's testimony that the Village would continue to maintain the parking restrictions in the face of the state's objections.

We agree. Although these actions and statements do not expressly disallow the State's claim, collectively they make it clear that the Village did not intend to resolve the matter prior to litigation.

Despite repeated efforts by the DNR to explain why the Village must comply with the revised code, the Village continued to seek "noninterference" with its control over reserved parking spaces for residents. In addition, citizen complaints regarding the Village's practice were being reported to the DNR. Even after the Village was notified that the DNR had referred the matter to the DOJ, the Village continued with its practice. In fact, in an article in the Lake Geneva Regional News by Dan Truttschel, Lundberg is quoted as stating, "[U]ntil the DNR presents its case, the village will continue to follow its previous practices at the launch." The DOJ filed the complaint on August 18, 1994, within a week of the article appearing in the Geneva Lake newspaper. Based on the Village's openly defiant stance, it was reasonable for the State to conclude that the Village had disallowed the claim. The State has satisfied the fourth requirement as well. We conclude that the State substantially complied with the notice of claim statute in this case and is therefore entitled to the injunctive relief as set forth in the trial court's order.

The Village also maintains that the trial court misapplied the law in determining that its ordinance providing reserved parking spaces for Village residents unreasonably excluded boats from the free use of Geneva Lake in violation of Wis. Const. art. IX, § 1; § 30.77(1)(b), STATS.; and provisions of WIS. ADM. CODE §§ NR 1.90 and 1.91. The Village contends that § 30.77(1)(b) prohibits ordinances that relate to the use and operation of boats on public waters and therefore "should not be construed to restrict the use to which a municipality may put its property when that use does not restrict access to the water itself." The Village further argues that §§ NR 1.90 and 1.91 were "intended to apply to restrictions that infringe on the public's ability to use the navigable waters of Wisconsin, and not to ordinances that relate only to the availability of convenient parking at boat launch facilities." These contentions are disingenuous and simply ignore the law and the facts.

In Wisconsin, navigable waters are held in trust by the state for the public's use. Wisconsin Const. art. IX, § 1. The trust reposed in the state is "an active, administrative, and governmental trust, and one which should be administered to promote not only navigation but the public health and welfare generally." *State v. Public Serv. Comm'n*, 275 Wis. 112, 119, 81 N.W.2d 71, 74 (1957) (quoted source omitted).

Our supreme court has noted that "[t]he right of the citizens of the state to enjoy our navigable streams for recreational purposes . . . is a legal right that is entitled to all the protection which is given financial rights." *Muench v. Public Serv. Comm'n*, 261 Wis. 492, 511-12, 53 N.W.2d 514, 522 (1952). "Early decisions

frequently spoke of navigation, often in a commercial sense, as the purpose of the trust, but all public uses of waters have from time to time been recognized, including pleasure boating, sailing, fishing, swimming . . . and enjoyment of scenic beauty." *Public Serv. Comm'n*, 275 Wis. at 118, 81 N.W.2d at 74. Although the state cannot change an entire lake, or destroy its character as a lake, the trust doctrine does not prevent minor alterations of the natural boundaries between water and land. *Id.*; *see also City of Milwaukee v. State*, 193 Wis. 423, 453, 214 N.W. 820, 831 (1927) (when modification of the doctrine is necessary, the legislature and courts should not hesitate to adopt an extension of the early principles to meet and to harmonize with the spirit of this modern, progressive age). We conclude that it is appropriate to extend the public trust doctrine to include navigable waters and the shore appurtenant in order to ensure the public's continued access and free use of the waters.

Even if the public trust doctrine was directed solely to navigable waters, Wis. Const. art. IX, § 1 does not preclude the legislature from protective action as long as it is not inconsistent with the constitutional provision. *See Omernik v. State*, 64 Wis. 2d 6, 13-14, 218 N.W.2d 734, 739 (1974). Authorizing the DNR to supervise and regulate the adequacy of public access to the waters of the state is not inconsistent with the doctrine. Rather, the opposite is true. The general public certainly cannot benefit from the public trust doctrine if it is unable to access the waters.

The legislature may delegate to the DNR the authority to exercise such legislative power as is necessary to "make public regulations interpreting [its] statute[s] and directing the details of [their]

execution." *Schmidt v. Department of Local Affairs & Dev.*, 39 Wis. 2d 46, 59, 158 N.W.2d 306, 313 (1968). This is precisely what the legislature has done with the public trust doctrine. The legislature has mandated that the DNR "provide an adequate and flexible system for the protection, development and use of . . . lakes . . . and other outdoor resources in this state." Section 23.09(1), STATS. Subsection (2) vests authority in the DNR to effectuate that purpose through rules it deems necessary. Also under § 23.11, STATS., the DNR is conveyed general rule-making power to supervise all the lands in which the state has an interest. Clearly, the public trust doctrine requires that the general public benefit from any such rules. Wisconsin Const. art. IX, § 1.

Regulation of the state's public access facilities by the DNR certainly is not inconsistent with these principles. Rather, this authority is outlined in WIS. ADM. CODE § NR 1.90(1), which states:

> It is the goal of the state of Wisconsin to provide, maintain and improve access to the state's navigable lakes, rivers and streams for the public. Public access facilities shall allow for public rights of navigation, related incidental uses and other uses which are appropriate for the waterway. Waterway uses shall be equally available to all waterway users and include enjoyment of natural scenic beauty and serenity. These public rights and uses may be provided by any combination of publicly and privately owned access facilities which are available to the general public free or for a reasonable fee. The [DNR], alone or in cooperation with local government, shall exercise its management and regulatory responsibilities to achieve this goal and to assure that levels and types

of use of navigable waters are consistent with protection of public health, safety and welfare, including protection of natural resources.

The DNR also must develop standards that "provide recreational opportunities consistent with demand, commensurate with the capacity of the resource to support recreation and that provide a broad range of recreational experiences." Section NR 1.90(2)(e). WIS CONSIN ADM. CODE §§ NR 1.91 to 1.93 were promulgated to apply to the DNR's decisions "related to acquiring, developing, maintaining and improving public boating access sites . . . and to other department decisions relating to protection and use of navigable waters." Section NR 1.91(1).

Consequently, the DNR promulgated standards to determine the adequacy of public boating access. Under these standards, a 5000-acre lake must provide, at a minimum, one or more access sites which in total provide one car-trailer unit per 70 open-water acres but no less than 100 units. WIS. ADM. CODE § NR 1.91(4)(d)1. An "access site" is defined as "an area of land providing public boat access or carry-in access, which provides parking for vehicles with or without trailers." Section NR 1.91(2)(b). The DNR or a local government may set up an alternative boating access plan pursuant to § NR 1.91(6). However, public boating access must provide for use which is consistent with the protection of navigable water and generally enjoyed by *all users*. Section NR 1.91(4)(d)7 (our emphasis).

Moreover, § 30.77(1)(b), STATS., precludes a municipality from "enact[ing] any ordinance or local regulation that in any manner excludes any boat from

the free use of the waters of this state . . . ."[10] The Village has two ordinances which collectively contravene this mandate. Pursuant to the Village traffic code, vehicles with boat trailers may not be parked on any Village street and only vehicles with resident stickers may use fourteen of the thirty-nine parking spaces restricted for use by residents.

The Village attempts to distinguish the inconvenience created by its ordinances for nonresidents as only related to parking and not to boating. However, this ignores the fact that inland lakes are primarily used for navigation in connection with recreation. *See City of Milwaukee*, 193 Wis. at 432, 214 N.W. at 823. It also ignores the reality that users—residents and nonresidents alike—of boat-launching facilities need a place to park their vehicles and/or boat trailers while enjoying the state's public waters. The Village does not allow vehicles with trailers to be parked on the streets and it ropes off the launch to nonresidents when the nonresident parking spaces are full, even if resident spaces are available.

---

[10] There are two exceptions, neither of which is applicable here. A municipality may enact ordinances which are in strict compliance with §§ 30.50 to 30.71, STATS., or rules promulgated under those sections. Section 30.77(2), STATS. In addition, a municipality may, in the interest of public health, safety or welfare, enact ordinances relating to the equipment, use or operation of boats or to any activity regulated by §§ 30.60 to 30.71, if the ordinances are not contrary or inconsistent with ch. 30, STATS. Section 30.77(3)(a), 1993-94. However, an ordinance that pertains to the equipment, use or operation of a boat must be adopted by all towns, cities and villages having jurisdiction on the lake to be valid. *Id.* The Village's ordinance does not relate to §§ 30.50 to 30.71. In addition, the Village's ordinance does not relate to the equipment, use or operation of boats and was not enacted throughout all of Geneva Lake.

Limited parking facilities, such as these, discourage and restrict the use of Geneva Lake by the general public.[11]

In sum, the regulation and enforcement of the public trust doctrine has been reposed with the legislature and the DNR, and occasionally in cooperation with municipalities. The doctrine mandates that access to the state's navigable waterways be equally available to all users. The legislature has ordered the DNR to insure equal public access to the waters of the state. We conclude that the DNR's authority implicitly extends to the shore or public access facilities in its enforcement of the public's rights. Here, the parking lot is an integral part of access to the lake and coupled with the prohibition against parking vehicles with trailers on the streets, the Village's ordinances overly limit access. Accordingly, we affirm the trial court's order enjoining the Village from restricting parking at the public boat launching facility for nonresidents.

---

[11] In *Town of La Grange v. Martin*, 169 Wis. 2d 482, 484, 485 N.W.2d 287, 287-88 (Ct. App. 1992), the towns adopted an ordinance which set a daily boat launching fee for a single boat at $25 for nonresidents under § 30.77(3)(e), STATS., 1991-92. The DNR determined that excessive fees restrict public access to and use of navigable waterways and found $4 to be a reasonable fee under the statute. *Town of La Grange*, 169 Wis. 2d at 486, 485 N.W.2d at 288-89. This court also determined that the ordinance violated § 30.77(3)(e) by setting the fee above the reasonable fee without seeking express DNR approval. *Town of La Grange*, 169 Wis. 2d at 488, 485 N.W.2d at 289. Similarly, the DNR has determined the number of access sites for reasonable public boating access. The Village has unilaterally reduced the number of access sites in violation of § 30.77(1)(b) and (3)(a), STATS., as well as WIS. ADM. CODE § NR 1.91(4)(d) and (6).

447

In response to the DNR's allegations that the Town's boat launching fees exceeded allowable surcharges, the Town asserted, as an affirmative defense, that the provisions of WIS. ADM. CODE § NR 1.91 are unreasonable and in violation of the Wisconsin Constitution as applied to the Town.[12] On appeal, the Town contends it "is not challenging the validity of [§ NR 1.91], but, rather, the [DNR's] application of it in attempting to acquire injunctive relief . . . ." Either position fails.

Sections 227.40 and 806.04(11), STATS., provide the exclusive means for judicial review of the validity of an administrative rule. Section 227.40(5) states:

> The joint committee for review of administrative rules shall be served with a copy of the petition in any action under this section and, with the approval of the joint committee on legislative organization, shall be made a party and be entitled to be heard.

Section 806.04(11), STATS., provides in relevant part:

> In any proceeding under this section in which the constitutionality, construction or application of any provision of ch. 227, or of any statute allowing a

---

[12] The Town filed the following affirmative defenses: (1) the complaint fails to state a claim for relief due to the DNR's failure to comply with § 893.80(1), STATS.; (2) the complaint is not ripe for adjudication due to the pendency of the administrative process; (3) the provisions of WIS. ADM. CODE §§ NR 1.91 and § 30.77(1)(b), STATS., are unreasonable and in violation of the Wisconsin Constitution; and (4) joinder of the two claims is improper and should be severed. Because of our determination regarding service of the JCRAR, we lack competency to determine the remaining issues.

> legislative committee to suspend, or to delay or prevent the adoption of, a rule as defined in s. 227.01(13) is placed in issue by the parties, the joint committee for review of administrative rules shall be served with a copy of the petition and, with the approval of the joint committee on legislative organization, shall be made a party and be entitled to be heard.

Service on the JCRAR must be made within sixty days after the filing of the complaint. Section 893.02, STATS.; *Richards v. Young*, 150 Wis. 2d 549, 557, 441 N.W.2d 742, 745 (1989).

The supreme court has stated that "[t]hese statutes are not permissive, but rather are mandatory." *Id.* at 555, 441 N.W.2d at 744. The legislature sought to give the JCRAR the opportunity to become a party to an action at a meaningful point in time when the constitutionality of an administrative rule was contested. *Id.* Service allows the JCRAR to choose whether to defend the rule in court or to avoid the litigation by suspending the rule. *Id.*

██

Here, it is not disputed that the Town failed to serve the JCRAR within sixty days of its answer and affirmative defenses. The trial court and this court are without competency to decide the constitutionality, validity or application of WIS. ADM. CODE § NR 1.91 as to the Town. Accordingly, the State is entitled to an injunction preventing the Town from charging the excessive boat launching fees.

*By the Court.*—Order affirmed and cause remanded.