PROVIDENCE CATHOLIC SCHOOL, Anthony Kordecki, Philip and Heidi Sturycz, Volinda Snell, Douglas and Mary Ann Barnett, Wayne and Margaret Schultz, William and Patricia Collins, James Mc Cormick and Gary and Debra Klaben, Plaintiffs-Appellants-Cross-Respondents,†

v.

BRISTOL SCHOOL DISTRICT NO. 1, Burlington Area School District, Kansasville School District No. 1, Dover, Salem Grade School Joint District No. 2, Wheatland Center School District, Kenosha Unified School District No. 1, Westosha Central High School, Union Grove Grade School Joint District No. 1 and Paris Consolidated School Joint School District No. 1, Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 98–3390. Submitted on briefs July 30, 1999.—Decided October 20, 1999.*

(Also reported in 605 N.W.2d 238.)

†Petition to review denied.

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Alex Flynn* of *Alex Flynn & Associates* of Milwaukee.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of *Kathy L. Nusslock* and *Mary L. Hubacher* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. This appeal concerns who will physically transport private schoolchildren to their school. The public school districts opt to fulfill their statutory duty to provide private schoolchildren transportation to school by contractually assigning this duty to the private schoolchildren's parents or guardians. To the contrary, the private school wants the public school districts to bus the schoolchildren and not assign this duty to the private schoolchildren's parents or guardians. Seeking a judicial resolution of this dispute,

Providence Catholic School and the parents of Providence schoolchildren[1] (hereinafter collectively referred to as the "students") filed a lawsuit against the public school districts (PSDs)[2] that are statutorily required to transport their children to school.

¶ 2. The students appeal the trial court's denial of their summary judgment motion and petition for a writ of mandamus. They contend that the trial court misapplied the law when it overlooked the § 121.54(2)(b)2, STATS., requirement that the elementary school districts must transport private schoolchildren "in vehicles owned, operated or contracted for by the district." Because the statute requires that the children be transported in the district's owned or contracted vehicles, the students argue that the PSDs are prohibited by this statutory language from contracting their transportation duty to the students' parents or guardians. However, because we read § 121.54(2)(b)2 together with other school transportation statutes and seek to harmonize the goals of each statute, we are not persuaded by the students' interpretation.

---

[1] The parents of Providence schoolchildren who are also parties to this appeal are: Anthony Kordecki, Philip and Heidi Sturycz, Volinda Snell, Douglas and Mary Ann Barnett, Wayne and Margaret Schultz, William and Patricia Collins, James McCormick and Gary and Debra Klaben.

[2] The public school districts who are parties to this appeal are: Bristol School District No. 1, Burlington Area School District, Kansasville School District No. 1, Dover, Salem Grade School Joint District No. 2, Wheatland Center School District, Kenosha Unified School District No. 1, Westosha Central High School, Union Grove Grade School Joint District No. 1 and Paris Consolidated School Joint School District No. 1.

¶ 3. In addition to this statutory argument, the students raise two more issues in their appeal. First, they dispute whether two of the defendants, Bristol School District No. 1 (Bristol) and Paris Consolidated School Joint School District No. 1 (Paris), both elementary school districts, gave the statutorily required one-year notice to their governing high school district, Westosha Central High School (Westosha), informing it that the elementary schools' boards decided to stop assuming the high school district's transportation duty. Yet, Westosha does not contest the adequacy of the elementary schools' notice, and the statute does not require that the students' parents or guardians receive any notice. Because of this, the students have no grounds on which to dispute the sufficiency of the high school's notice.

¶ 4. The students' final argument also pertains to sufficient notice. In this instance, the students insist that the PSDs failed to comply with the thirty-day notice required in § 121.55(3), STATS.; therefore, the PSDs must bus the schoolchildren. This statute requires that if the school boards decide to fulfill their transportation duties by contracting with the schoolchildren's parents or guardians under the reduced formula in that subsection, then the parents or guardians must be notified of this at least thirty days before the school year begins. However, other subsections provide for the parental contract transportation option and do not require any notice. See § 121.55(1). Because the students do not offer proof that their contract with the PSDs was formulated under § 121.55(3), we dismiss their contention.

¶ 5. On cross-appeal, the PSDs appeal from the court's declaratory judgment, arguing that because of jurisdiction and notice defects the trial court should not

166

have heard this case. Again, we disagree. We hold that the trial court had primary jurisdiction and did not err when concluding that the students' notice was adequate under the § 893.80, STATS., savings clause.

¶ 6. The PSDs also appeal the trial court's decision that Providence schoolchildren, who take classes at a Providence campus outside of the five-mile transportation radius but live within the five-mile radius of another Providence campus, are entitled to transportation by the school districts. Because the PSDs fail to present evidence that Providence's attendance area was not approved by the districts' school boards, we agree with the trial court. As a result, we affirm the judgment and order.

### BACKGROUND

¶ 7. Public high school districts must provide private schoolchildren with transportation to and from their schools. *See* § 121.54(2)(b)1, STATS. However, a public elementary school in a union high school district may elect to perform the high school's transportation duties by providing this transportation in its own or a contracted vehicle. *See* § 121.54(2)(b)2.

¶ 8. In this case, the PSDs had contracted with the students' parents or guardians for the schoolchildren's transportation to and from school. *See* § 121.55(1), (3), STATS. More specifically, the students' transportation needs were met as follows. The students' parents or guardians contracted to take over the PSDs' obligation to transport the children and gave the contract money to Providence to pay for the busing the school had arranged for the children. The conflict between the parties arose during the 1997–98 school year. During that year, the amount of money the PSDs

gave to the students' parents or guardians did not cover the actual busing costs for the children.

¶ 9. Because of this shortage of transportation funds, Providence's principal, Sister Strandell, met with the PSDs and requested that the districts either physically transport the Providence children to school or pay additional money per student to cover Providence's extra busing costs. The PSDs denied Strandell's request to physically transport the children because the cost of transporting the small number of Providence schoolchildren was too high. They similarly refused to reimburse Providence for its extra busing costs. The PSDs wanted to continue contracting for transportation with the students' parents or guardians. Between July 8 and 29, 1998, the PSDs notified the students' parents or guardians that they would again be opting for parental contracts and not providing actual busing for the upcoming school year. In response, the students sued.

¶ 10. In their lawsuit, the students sought a temporary injunction ordering the PSDs to physically transport Providence schoolchildren during the pendency of the lawsuit; petitioned for a writ of mandamus requiring the PSDs to comply with § 121.55(1) and (3), STATS., and bus the Providence schoolchildren; and a declaratory judgment alleging the same. After a September 10, 1998 hearing, the court denied the students' motion for a temporary injunction. The PSDs moved to quash the petition for a writ of mandamus and to dismiss the complaint on jurisdictional grounds. The PSDs' jurisdictional argument was based on grounds that the students failed to comply with the notice of claim statute and should have first sought an administrative remedy before the Department of Public

Instruction (DPI). The PSDs also moved the court for summary judgment.

¶ 11. The students responded with their own motion for summary judgment. A hearing was held on the summary judgment motions. In a declaratory judgment, the court denied the PSDs' motions to dismiss on jurisdictional grounds and for summary judgment. The court similarly denied the students' motions for summary judgment, injunctive relief and petition for a writ of mandamus. The students appeal. The PSDs cross-appeal from the order denying their motion to dismiss. We will begin with the cross-appeal.

## DISCUSSION

### *Cross-Appeal*

¶ 12. The PSDs appeal from the trial court's denial of their motion to dismiss on jurisdictional grounds. They argue that the trial court erred in determining that: (1) the students could maintain their action without first seeking relief before an administrative agency; (2) the PSDs had actual notice of the students' claim as required by § 893.80, STATS.; and (3) the PSDs must transport Providence students to the campus within the public school district's five-mile transportation radius, even if those students take classes at a campus beyond this radius.[3] We will address each argument in turn.

---

[3] The trial court concluded that Providence did not have standing to sue because its legal rights were not affected by this case's issues. On cross-appeal, the PSDs contend that Providence has waived its right to contest this issue by not raising it in the students' main brief to this court. Because the Providence schoolchildren's parents or guardians are also parties to this appeal and their standing before this court is not contested, we

## A. Jurisdiction

¶ 13. The PSDs argue that the trial court did not have jurisdiction to hear this case. Because an administrative remedy was statutorily provided, the PSDs contend that the trial court erred by retaining subject matter jurisdiction without the matter first being heard by the administrative agency. The PSDs find support for this argument in § 121.55, STATS. Section 121.55(1)(b) states: "If the school board and the [contracting] parent or guardian cannot agree upon the amount of compensation, the [DPI] shall determine the amount of compensation to be designated in the contract."

¶ 14. In response, the students contend that the trial court properly had jurisdiction because the dispute is not over the contract amount governed by § 121.55, STATS., but instead the dispute concerns whether the PSDs must physically transport the private schoolchildren. We agree with the students that the pivotal issue in this case is not about a contract amount, as referred to in § 121.55, and the administrative remedy in that section does not apply to this case.

¶ 15. The case's pivotal issue requires statutory interpretation—does § 121.54(2)(b)2, STATS., compel elementary schools to actually bus private schoolchildren and not enter into parental or guardian contracts for the transportation? Before we may consider this proposition, we must first deal with the jurisdiction dilemma: which entity should decide the controversy—the trial court or the DPI.

must resolve the issues presented by the parties and do not need to reach a decision on this argument. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need be addressed).

¶ 16. When the contested issue involves an area of an administrative agency's special competence, the agency is best equipped to make the decision.

> Administrative agencies are designed to provide uniformity and consistency in the fields of their specialized knowledge. When an issue falls squarely in the very area for which the agency was created, it is sensible to require prior administrative recourse before a court decides the issue.

*City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 421, 491 N.W.2d 484, 492 (1992).

¶ 17. Although uncommon, there are instances when an administrative agency and the trial court have concurrent jurisdiction over the resolution of the issue in dispute. This is termed primary jurisdiction, a doctrine of comity. The trial court, guided by specific factors, will exercise its discretion in deciding whether to retain jurisdiction. *See id.* at 420, 491 N.W.2d at 491. We determine that this is one of the rare cases of primary jurisdiction. The trial court and the DPI have concurrent jurisdiction over the interpretation of the school transportation statute in question. That being the case, our next course is to examine if the trial court properly exercised its discretion by retaining jurisdiction.

¶ 18. This court will not disturb the trial court's determination absent an erroneous exercise of that discretion. *See Baird Contracting, Inc. v. Mid Wis. Bank*, 189 Wis. 2d 321, 324, 525 N.W.2d 276, 277 (Ct. App. 1994). A trial court properly exercises its discretion when it examines the relevant facts, applies the proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *See id.*

¶ 19. When determining if it should retain jurisdiction, the trial court should consider these factors: if the factual issues are significant, the best course is for the court to decline jurisdiction; however, if statutory interpretation or issues of law are significant, the court may properly retain jurisdiction over the matter. *See City of Brookfield*, 171 Wis. 2d at 421, 491 N.W.2d at 492.

¶ 20. Because this is primarily a case of statutory interpretation, we determine that the court did not erroneously exercise its discretion by retaining jurisdiction. Factual issues are nonexistent; indeed, both parties moved the court for summary judgment, asserting that there were no material issues of fact. Furthermore, the DPI has not previously addressed this issue. Nor do the PSDs point to any DPI rules addressing this issue that could weigh in favor of the agency receiving the jurisdiction. The trial court had no reason to believe that this issue required the DPI's specialized knowledge. On the basis of these factors, we agree with the court's exercise of discretion.

### B. Notice

¶ 21. The PSDs argue that the trial court erred by determining that they had actual notice of the students' claim before the commencement of the lawsuit. To resolve this contention, we will apply the notice of claim statute, § 893.80, STATS., to these undisputed facts. Interpreting statutes is a question of law that we review independently of the legal determination rendered by the trial court. *See DOT v. Peterson*, 218 Wis.

2d 473, 475, 581 N.W.2d 539, 540 (Ct. App. 1998), *aff'd,* 226 Wis. 2d 623, 594 N.W.2d 765 (1999).

¶ 22. Indeed, § 893.80, STATS., requires that within 120 days of the event giving rise to the claim, written notice of the claim must be given to the governmental body. However, the section continues, outlining what has been termed its "savings clause":

> Failure to give the requisite notice shall not bar action on the claim if the . . . subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant . . . subdivision or agency . . . .

Section 893.80(1)(a).

¶ 23. In this case, the trial court concluded that while no formal written notice, as specified in § 893.80(1)(a), STATS., was given by the students to the PSDs, the *actual* notice given by the students met the requirements of the savings clause of that section. The court reasoned that the July 17, 1998 letter from the students' attorney to the PSDs gave them actual notice of the claim. This letter stated: "If [the] school district does not comply with its statutory obligations and *bus those students* within its district to Providence Catholic School, we will seek enforcement of the statute by taking legal action." While this letter may have given the PSDs actual notice of possible litigation if an agreement was not reached, the statute requires that the claimant also wait after giving the notice for the governmental body to respond before proceeding with his or her claim. *See State v. Town of Linn,* 205 Wis. 2d 426, 440, 556 N.W.2d 394, 401 (Ct. App. 1996). The claimant must wait for the governmental body to either

disallow the claim or permit 120 days to pass without responding. *See id.* Here, the students filed their complaint on August 10, 1998, and did not wait 120 days.

■

¶ 24. The trial court found that this was not detrimental to the students' cause of action because the PSDs' actual notice combined with their effective disallowance of the students' claim satisfied the statutory requirements. For months the parties had been in dispute over the proper interpretation of the statute. The PSDs made it clear that they did not intend to resolve the dispute; in fact, they began the new school year refusing to provide busing and insisting on using the parental or guardian contracts for transportation. In *Town of Linn*, we concluded that if the governmental body's actions clearly express that it does not intend to resolve the dispute prior to litigation, the claimant may reasonably assume that the claim has been disallowed. *See id.* at 440–41, 556 N.W.2d at 401. We agree with the trial court that the PSDs' actions and statements made it clear that they did not intend to resolve the matter prior to litigation. As a result, we find no trial court error.

## C. Five-Mile Limitation

¶ 25. The PSDs also appeal from the trial court's determination that they are obligated to provide transportation for Providence's students who reside within five miles of either Providence's east or west campus. In particular, they argue that the plain language of § 121.54(2)(b)1, STATS., does not require them to transport any students who do not "attend" the Providence branch that is located within the school districts' five-mile transportation radius. For example, they contend that they should not provide transportation to Provi-

dence students who attend classes at the west campus but will be dropped off by the school districts at the east campus and later transferred by Providence to the west campus to go to their classes.

¶ 26. Providence has only existed since 1996. Before 1996, it was two separate kindergarten through eighth-grade schools. When these two schools joined together, adopting a mutual school board and principal, the resulting Providence had two buildings or campuses, an east and a west. Providence designated certain grade levels for each campus. Students in kindergarten through fifth grades attend the east campus, while the sixth- through eighth-grade students attend the west campus.

¶ 27. For two of the public school districts that are parties to this cross-appeal, one of Providence's two campuses lies beyond their five-mile transportation radius. Currently, this places six students outside of the statute's transportation mandate. To solve this situation, Providence requests that the six students only be transported to the Providence campus that lies within the transportation radius, and then Providence will supply the intra-campus transportation for the students.

¶ 28. A private school's attendance area is "the geographic area designated by the governing body of a private school as the area from which its pupils attend and approved by the school board of the district in which the private school is located." Section 121.51(1), STATS. In turn, the high school district must transport

> each pupil residing in the school district who attends any elementary grade, including kindergarten, or high school grade at a private school located 2 miles or more from the pupil's residence, if such

private school is a school within whose attendance area the pupil resides and is situated within the school district or *not more than 5 miles beyond the boundaries of the school district* measured along the usually traveled route.

Section 121.54(2)(b)1, STATS. (emphasis added).

■

¶ 29. Although the PSDs characterize their argument as one where we need to resort to a dictionary definition of the word "attend" to interpret the statute, we disagree and find the issue's resolution in the statute's plain language. The PSDs object to transporting six of the students in Providence's attendance area. As § 121.51(1), STATS., outlines, a private school's attendance area is proposed by the private school's governing body and then approved by the public school district's school board. In the present case, the PSDs present no evidence that the school boards did not approve Providence's attendance area. The statute states that if the private and public schools disagree on the attendance area, then the state superintendent of schools shall make the final determination. *See id.* Without the presence of any evidence regarding the statutorily provided procedure for determining a private school's attendance area, we will assume it was complied with and that the school board approved Providence's proposed attendance area. Accordingly, we hold that the trial court did not err by determining that these six students were entitled to transportation by the PSDs.

### *Appeal*

¶ 30. The students raise three contentions in their appeal. First, they argue that § 121.54(2)(b)2, STATS., if considered alone, mandates that public elementary schools, opting to transport private

schoolchildren, must do so "in vehicles owned, operated or contracted for by the district." This reading of the statute would not permit elementary schools to contract their transportation duty to the private schoolchildren's parents or guardians.

¶ 31. The final two arguments regard the giving of proper statutory notice. In the first instance, the students contend that two elementary school districts, Paris and Bristol, did not comply with the § 121.54(2)(b)2, STATS., requirement that elementary schools give one-year notice to their governing high school district when they decide to stop providing transportation for private schoolchildren.

¶ 32. And finally, the students insist that the PSDs did not follow the statutorily mandated thirty-day notice to the schoolchildren's parents or guardians of their decision to use parental or guardian contracts for the private schoolchildren's transportation. *See* § 121.55(3), STATS.

¶ 33. Each of these issues requires us to conduct statutory interpretation. Statutory interpretation is a question of law that we review de novo and without deference to the trial court. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

### A. *Parental or Guardian Transportation Contracts*

¶ 34. The students and the PSDs debate the correct interpretation of §§ 121.54(2)(b)2 and 121.55, STATS. The students assert that the trial court erred by not concluding that § 121.54(2)(b)2, when read alone, requires public elementary schools to physically transport private schoolchildren in vehicles owned, operated or contracted for by the district. In contrast, the PSDs argue that if §§ 121.54(2)(b)2 and 121.55 are read

together, the sections clearly allow elementary schools, who transport private schoolchildren, the same transportation options available to high school districts. We agree with the PSDs.

¶ 35. As we have previously indicated, this dispute presents a statutory construction issue. The goal of statutory construction is to ascertain the legislature's intent. *See Rolo v. Goers*, 174 Wis. 2d 709, 715, 497 N.W.2d 724, 726 (1993). We first look to the statute's language and if the language is clear and unambiguous, the statute's terms will be applied in accordance with the statute's plain language. *See J.A.L. v. State*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). Only if there is ambiguity do we resort to rules of construction, including resort to legislative history, in an effort to determine legislative intent. *See id.*

¶ 36. When multiple statutes address the same subject matter, we properly read the two statutes in pari materia such that both will be operative. *See Schinner v. Schinner*, 143 Wis. 2d 81, 91, 420 N.W.2d 381, 385 (Ct. App. 1988). If the potential for conflict between the statutes is present, we will read the statutes to avoid such conflict if a reasonable construction so permits. *See Wyss v. Albee*, 193 Wis. 2d 101, 110, 532 N.W.2d 444, 447 (1995).

¶ 37. The statutes at issue are the following:

**121.54 Transportation by school districts.**
. . . .
(2)(b)2. . . . [A]n underlying elementary school district of a union high school district may elect, by resolution adopted at its annual or special meeting, to transport elementary school children who reside within the underlying district and qualify for trans-

portation under subd. 1., *in vehicles owned, operated or contracted for by the district.* Once adopted, such a resolution may be repealed only upon one year's notice to the board of the union high school district of which the underlying district is a part.

**121.55 Methods of providing transportation.**

**(1)** School boards may provide transportation by any of the following methods:

(a) By contract with a common carrier, a taxi company or other parties.

(b) *By contract with the parent or guardian of the pupil to be transported.* If the school board and the parent or guardian cannot agree upon the amount of compensation, the department shall determine the amount of compensation to be designated in the contract.

(c) By contract with another school board, board of control of a cooperative educational service agency or the proper officials of any private school or private school association.

(d) By contract between 2 or more school boards and an individual or a common carrier.

(e) By the purchase and operation of a motor vehicle. [Emphasis added.]

¶ 38. When confronted with statutory inconsistency on a subject, it is our duty, if possible, to read similar-subject statutes as interrelated and to harmonize them in order to give each full force and effect. *See Glinski v. Sheldon,* 88 Wis. 2d 509, 519, 276 N.W.2d 815, 820 (1979). Following this rule, we determine that §§ 121.54(2)(b)2 and 121.55, STATS., should be read in conjunction with each other.

¶ 39. By applying the in pari materia construction to these provisions, we resolve that § 121.54(2)(b)2, STATS., does not state the only trans-

portation method available to elementary schools. Rather, the alternatives to transportation listed in § 121.55, STATS., are applicable to elementary schools. Therefore, we reject the students' argument to the contrary.

¶ 40. Furthermore, § 121.55(3), STATS., references § 121.54(2)(b)1, STATS. Section 121.55(3) reads:

> If the estimated cost of transporting a pupil under s. 121.54(2)(b)1. is more than 1.5 times the school district's average cost per pupil for bus transportation in the previous year . . . the school board may fulfill its obligation to transport a pupil under s. 121.54(2)(b)1. by offering to contract with the parent or guardian of the pupil.

Because the legislature referred to § 121.54 in one subsection of § 121.55, we determine that the legislature sought to incorporate its provisions into the whole of § 121.55. *See generally Town of Hallie v. City of Eau Claire*, 173 Wis. 2d 450, 456, 496 N.W.2d 656, 659 (Ct. App. 1992) ("When construing a statute, we consider the entire section and the related sections and construe them together."). In fact, here the legislature is speaking in general terms about school boards and does not restrict the provision to a particular type of district that it intends § 121.54 to apply. Consequently, we determine that the PSDs could properly exercise the transportation alternative of parental or guardian contracts provided in § 121.55.

### B. One-Year Notice to High School Districts

¶ 41. The students contend that two elementary school districts, Paris and Bristol, did not comply with the § 121.54(2)(b)2, STATS., requirement that the ele-

mentary schools give one-year notice to their governing high school district if they decided to relinquish their assumption of the transportation duties. In this case, Paris and Bristol notified Westosha on June 9, 1998, that they had decided not to assume the high school's transportation obligation for the 1998–99 school year. The students argue that the trial court erred by ignoring that notice was given at this late date. The students' position is that they have grounds to contest this issue because the one-year-notice provision is for the benefit of their parents or guardians. We cannot agree.

¶ 42. The statute is clear and unambiguous: notice only has to be given to the high school district. Nowhere in the statute does it mention that the schoolchildren's parents or guardians should receive notice. Requiring sufficient notice for the high school districts is understandable because they will need adequate time to arrange for different transportation. Even if Paris and Bristol's notice to Westosha was late, Westosha accepted it. By accepting the late notice, Westosha effectively waived its right to contest the allegedly late notice. The students seek to enforce a notice requirement where the party affected by the notice is not contesting the issue. Admittedly, it would be beneficial for parents or guardians to know if there is a change in their child's school transportation, but this does not create a statutory right to notice of such a decision. Because the statute does not provide for the schoolchildren's parents or guardians to receive notice of a change in the elementary schools' transportation policy, the students have no legal right to pursue this issue.

## C. Thirty-Day Notice to Providence Parents or Guardians

¶ 43. The final issue we will address also pertains to whether sufficient notice has been given. In this instance, the students insist that because the PSDs failed to give a thirty-day notice to the schoolchildren's parents or guardians, as required in § 121.55(3), STATS, the PSDs must bus the schoolchildren. Section 121.55(3) provides in relevant part:

> If the estimated cost of transporting a pupil . . . is more than 1.5 times the school district's average cost per pupil for bus transportation in the previous year . . . the school board may fulfill its obligation to transport a pupil under s. 121.54(2)(b)1. by offering to contract with the parent or guardian of the pupil. The contract shall provide for an annual payment for each pupil of not less than $5 times the distance in miles between the pupil's residence and the private school he or she attends, or the school district's average cost per pupil for bus transportation in the previous year . . ., whichever is greater, but the payment shall not exceed the actual cost nor may the aids paid under s. 121.58(2)(a) for the pupil exceed the cost thereof. *A school board which intends to offer a contract under this subsection shall notify the parent or guardian of the private school pupil of its intention at least 30 days before the commencement of the school term of the public school district.* [Emphasis added.]

¶ 44. This statute requires that if the school boards decide to fulfill their transportation duties by contracting with the schoolchildren's parents or guardians under the reduced formula in subsec. (3), the parents or guardians must be notified of this decision

at least thirty days before the school year begins. However, § 121.55(1), STATS., permits the parental or guardian contractual transportation option and does not require that any notice be given to the parents or guardians. Notice only needs to be given to the parents or guardians if the school boards seek to use the reduced formula provided in subsec. (3). The students fail to present evidence that the school board formulated their parental and guardian contracts in accordance with the subsec. (3) formula. Because of this, we assume that the school boards used the standard parental or guardian contract method in subsec. (1) and not the exceptional method in subsec. (3). As a result, no notice was required to be given to the schoolchildren's parents or guardians. The students' argument is dismissed.

## CONCLUSION

¶ 45. In summary, the students appeal from the trial court's judgment and order, arguing that it erred on three separate issues of statutory interpretation. For the previously stated reasons, we affirm the trial court's conclusion on each issue.

¶ 46. As for the cross-appeal, we likewise affirm the trial court's exercise of discretion in retaining jurisdiction over this case and agree with its resolution of the PSDs' two statutory concerns. The judgment and order are affirmed.

*By the Court.*—Judgment and order affirmed.