THOMSON, Trustee (CHICAGO & NORTH WESTERN RAILWAY COMPANY), Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent.

*September 17—October 13, 1942.*

For the respondent there was a brief by the *Attorney General,* and *Newell S. Boardman* and *H. T. Ferguson,* assistant attorneys general, and oral argument by *Mr. Ferguson.*

ROSENBERRY, C. J. The first contention of the plaintiff is that the Public Service Commission had no jurisdiction because it proceeded upon its own motion which it is not authorized to do under sec. 88.38, 88.39, or 88.40, Stats. The conclusion at which we have arrived makes it unnecessary for us to determine this question. It is considered that in this case the proceedings were taken under the wrong section of the statutes, and we reach that conclusion for the following reason: Sec. 88.38, so far as material here, is as follows:

"*Culverts and outlets to permit natural drainage.* (1) Whenever any county, town, city, village or railway company shall have heretofore constructed and now maintains or hereafter shall construct and maintain any public highway or road grade through, over and across any marsh, lowland or other natural depression over or through which surface water naturally flows and percolates, and the stopping of the said flow and percolation of said water by said highway or road grade causes any crop or land to be flooded, water-soaked or otherwise damaged, such county, town, city, village or railway company shall construct, provide and at all times maintain a sufficient ditch or ditches, culverts or other outlets to allow the free and unobstructed flow and percolation of said water from said lands, and to prevent said lands from becoming flooded, water-soaked or otherwise damaged by said water. . . ."

Sec. 88.39, Stats., provides:

"*Connecting ditch or sluiceway across railroad right of way.* Whenever the owner or owners of any land desire to drain the

same by a blind or open ditch, and to properly drain such land, a connecting ditch or sluiceway should be constructed across the right of way of any railroad company, such owner or owners shall file with the depot agent of such company nearest to said land a written petition stating the kind of ditch proposed to be built by such owner or owners and requesting the railroad company to construct a ditch or sluiceway across its right of way which will conform thereto. Within sixty days after the filing of such petition the railroad company shall construct such ditch or sluiceway and the petitioners shall pay the labor cost of such construction."

Sec. 88.40, Stats., provides as follows:

*"Hearings regarding culverts, etc.* In case of the failure or refusal of any railroad company to comply with any of the provisions of sections 88.38 and 88.39, the person, firm or corporation or the town, village or city aggrieved thereby may file a complaint with the public service commission setting forth the facts. The commission shall investigate and determine the matter in controversy, in accordance with the provisions of chapter 195, and any order it shall make in said proceeding shall have the same force and effect as an order in any other proceeding properly begun under and by virtue of the provisions of said chapter."

The Public Service Commission treated the petition of Berg and the ten other property owners as a petition to enforce sec. 88.38, Stats. No attempt was made on the part of the petitioners to proceed under sec. 88.39. While the railway company is required to construct a culvert under either section, under sec. 88.39 the petitioners must pay the labor costs while under sec. 88.38 the railway company must bear the cost.

There can be no doubt but that the two sections apply to two entirely different situations. A considerable part of the respondent's brief is devoted to a discussion of floodwaters and the duty of riparian owners in respect thereto. This case deals solely and wholly with surface water. The term "surface waters" is defined in Restatement, Torts, p. 333, sec. 846, as follows:

"The term 'surface waters,' . . . comprehends waters from rains, springs or melting snow which lie or flow on the surface of the earth but which do not form part of a watercourse or lake."

Comment *b* is as follows:

"The term 'surface waters' is used to describe those casual waters which accumulate from natural sources and which have not yet evaporated, been absorbed into the earth or found their way into a stream or lake. The term does not comprehend waters impounded in artificial ponds, tanks or water mains."

Whether the plaintiff was required to anticipate and provide for floodwaters is a question not presented by the facts in this case. In this case we are dealing with strictly surface waters. Floodwaters are those which break away from a stream under conditions which do not usually occur. *Everett v. Davis* (1941) 18 Cal. (2d), 389, 115 Pac. (2d) 821. The law governing floodwaters has no application to the facts of this case.

The question for decision is whether the petitioners should have proceeded under sec. 88.38 or under sec. 88.39, Stats. It requires no argument whatever to demonstrate the fact that the situation dealt with in this case is not that described in sec. 88.38,—a situation which is created not by surface water but by an unusual condition of the ground in the basin. The Public Service Commission found:

"Witnesses are all agreed that it was the combination of frozen ground and the precipitation that caused the flood conditions. Unquestionably the situation was abnormal but not unnatural."

A condition which occurs but three times in twenty-eight years is not the condition described in sec. 88.38, Stats., which deals with a situation where a public highway or railroad grade is established— .

"over and across any marsh, lowland, or other natural depression over . . . which surface water naturally flows and percolates."

If the situation disclosed by the evidence in this case could be dealt with under sec. 88.38, Stats., there would be no reason for enacting sec. 88.39.

In this case it appears that the railroad was built in 1859; that the sidetrack under which the proposed culvert will pass was constructed in 1905; that from 1860 to 1937, a total of seventy-eight years, February precipitation was in excess of that of 1938 some twenty-two times; that from 1906 to 1937, thirty-two years, February precipitation was in excess of that of 1938, some nine times. The abnormal condition complained of which resulted from the freezing of the bottom of the basin rather than from the falling of the rain or melting of the snow is one not within sec. 88.38, Stats.

*By the Court.*—The judgment appealed from is reversed, with directions to set aside the order of the Public Service Commission.