Neal HOUSLET, Jr., Petitioner-Respondent,

v.

State of Wisconsin DEPARTMENT OF NATURAL RESOURCES,
Appellant.

Court of Appeals

*No. 80–909. Submitted on briefs August 6, 1981.—
Decided December 13, 1982.*
(Also reported in 329 N.W.2d 219.)

For the appellant the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Linda H. Bochert,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Tommy G. Thompson* and *Thompson Law Office* of Mauston.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J. The Department of Natural Resources appeals from an order remanding for reconsideration its order denying respondent Houslet a dredging contract under sec. 30.20(2), Stats.[1]

The issues are:

(1) Whether the department correctly applied Wis. Admin. Code, sec. NR 1.95(4)(b),[2] pertaining to the regulation of wetlands, in denying Houslet's dredging application; and

(2) Whether the department erred in failing to make a specific finding concerning the potential effect of granting the contract on water quality and water pollution pursuant to *Reuter v. Department of Natural Resources,* 43 Wis. 2d 272, 168 N.W.2d 860 (1969).

We hold that the department correctly applied the administrative wetlands regulation in exercising its discretion to refuse to enter a dredging contract under sec. 30.20(2)(a), Stats., and that its failure to make a specific finding concerning the potential pollutant effects of the dredging project was harmless error which does not warrant remand to the department for reconsideration. We therefore reverse.

[1] Section 30.20(2), Stats., provides in relevant part as follows: CONTRACTS FOR REMOVAL. (a) The department, whenever consistent with public rights, may enter into contracts on behalf of the state for the removal of any material from the bed of any navigable lake or any of the outlying waters, and for the lease or sale of the material. Every contract shall contain such conditions as may be necessary for the protection of the public interest and the interests of the state . . . .

[2] Wisconsin Admin. Code, sec. NR 1.95(4)(b), states:

(b) For wetlands under its management and control, the department shall:

1. Preserve and protect them from harmful effects by every lawful means.

2. Recognize their obvious and subtle natural values in preparing management plans and take all reasonable steps to minimize harmful effects.

The facts are undisputed. Houslet owns property adjacent to Goose Lake in the Town of Jackson, Adams County. Goose Lake is a natural "pothole" lake of about 84 acres, with an ordinary high water mark of 97.7 feet. Houslet applied for a dredging contract authorizing him to remove 7,500 cubic yards of material consisting of muck, weeds, and other organic bottom materials from a designated portion of the lake. His purpose was to make the project area suitable for swimming so that he could develop his adjacent property into residential lots.[3]

The department's initial denial of Houslet's application was reviewed and upheld by an independent hearing examiner who made independent findings of fact and conclusions of law after an evidentiary hearing. The examiner specifically found that "[t]he proposed dredging project is entirely below the ordinary high water mark of Goose Lake." This finding is not challenged on appeal.

In addition, the examiner made the following unchallenged findings of fact:

7. The proposed dredging site includes areas which have lush growths of emergent and floating plants. These plants provide a desirable habitat for wildlife, especially waterfowl which are attracted to the area by the available feed. Although a modest amount of other wildlife habitat does exist in the Goose Lake area, the destruction of this wetland area by the proposed dredging would remove this highly desirable area from its natural state.

8. No fish spawning beds have been found in the proposed project site. The area presently is utilized by fish when resting or feeding. Given the nature of Goose Lake's fish population and its history of winter fish

---

[3] The respondent's modified proposal was for the removal of 7,500 cubic yards of lake bed material from 100 feet of lake frontage, in an area extending 30 feet into the lake on the eastern boundary, to 120 feet on the western boundary, with a maximum extension of 130 feet.

kills, no substantial injury will occur to the public fishing rights if the contract is approved by the Department.

9. Dredging for the purpose of residential development on the south shore of Goose Lake as proposed by Mr. Houslet, would necessarily introduce increased human activity to an area which is presently undisturbed and in its natural state. Such activity would reduce the area's attractiveness to wildlife and reduce the amount of wetland habitat which is already scarce in the area.

10. Removal of the weedbeds and the deepening of Goose Lake by the proposed dredging would improve navigation through that portion of the lake.

11. Weighing the benefits to be gained by the public against the detrimental effects of the proposed project, it is reasonable to deny authority to the applicant to remove materials from the bed of Goose Lake.

The only conclusion of law made by the examiner which is material to this appeal is:

2. *A portion of the area which the applicant desires to dredge constitutes a wetland as defined in sec. NR 1.95(3), Wisconsin Administrative Code.* Since the bed of a navigable lake is owned by the state and held in trust for its citizens, *the disposition of the application herein is governed by sec. NR 1.95(4)(b).* Said provision requires that the Department take all reasonable steps to minimize harmful effects to wetlands under its management and control. [Emphasis supplied.]

The examiner's independent determination that the contract should be denied was the subject of a ch. 227, Stats., judicial review. The trial court held that the hearing examiner "erred in concluding as a matter of law that part of the area which the applicant desires to dredge is a wetland area," and thus that the examiner "incorrectly applied" Wis. Admin Code sec. NR 1.95(4) (b) in denying the application. It also held that the examiner erred in failing to make a finding concerning the potential pollutant effect of the proposed dredging. The court said:

[T]he Department of Natural Resources did use criteria other than that set forth in Section 30.20. It is the opinion of this Court the Wisconsin Department of Natural Resources must follow 30.20 . . . and this Statute only. The legislature has set forth its criteria to determine removal of material as "whenever consistent with public rights". It further states, "where the waters would not be disturbed in the removal operation . . ." Also, "contracts shall contain such conditions as may be necessary for the protection of the public interest and the interest of the state, . . ." Finally, that the permit "may be issued by the department if it finds that the issuance of such a permit will be consistent with the public interest in the water involved."

It is the Order of the Court the matter be remanded to the Wisconsin Department of Natural Resources for further hearing. It is thus reconfirmed by the Court the decision that the Wisconsin Department of Natural Resources is mandated by this Statute to specifically follow it directly in line with the Legislative intent.

The circuit court's order remanding to the department for reconsideration constituted a final order appealable as of right under sec. 808.03(1), Stats. *Bearns v. ILHR Department,* 102 Wis. 2d 70, 306 N.W.2d 22 (1981).

The scope of our review is identical to that of the circuit court under sec. 227.20, Stats. *Frito-Lay, Inc. v. Labor & Industry Review Comm.,* 95 Wis. 2d 395, 400, 290 N.W.2d 551, 555 (1980), *aff'd.,* 101 Wis. 2d 169, 303 N.W.2d 668 (1981). The department's findings of fact will not be set aside if they are supported by substantial record evidence. Sec. 227.20(6); *Boynton Cab Co. v. ILHR Department,* 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). Questions of law are reviewable *ab initio.* Sec. 227.20(1)(b); *Boynton Cab, supra.* A reviewing court does, however, give due weight to an agency's interpretation on a question of law where the agency applied its "experience, technical competence, and specialized knowledge" to the decision. Sec. 227.20(10).

[A reviewing court] will give deference to agency determinations, where the agency has particular expertise, rational basis exists in law for the agency's interpretation, and it does not conflict with the statute's legislative history, prior decisions of this court, or constitutional prohibitions.

*Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd*, 447 U.S. 207 (1980).

■

Moreover, where an agency's interpretation of its own administrative regulation is involved, "It is black-letter law that the interpretation . . . is entitled to controlling weight unless inconsistent with the language of the regulation or clearly erroneous." *Beal v. First Fed. Sav. & Loan Asso. of Madison*, 90 Wis. 2d 171, 183, 279 N.W.2d 693, 698 (1979). *Accord, Rickaby v. Health & Social Services Department*, 98 Wis. 2d 456, 461, 297 N.W.2d 36, 39 (Ct. App. 1980).

The definition of "wetlands" provided in Wis. Admin. Code, sec. NR 1.95(3) (1978) controls this appeal.[4]

Wetlands are here defined as those land areas characterized by surface water or saturated soils during at least a part of the growing season such that moist soil vegetation or shallow water plants can thrive. The permanent

---

[4] The reference is to Wis. Admin. Code, sec. NR 1.95(3), as it stood in the Register of March 1978, No. 267, effective April 1, 1978. The same definition is currently found in sec. NR 1.95 (4)(c).

We also note the similar definition of "wetland" found in sec. 23.32(1), Stats., applicable to wetlands mapping:

In this section "wetland" means an area where water is at, near, or above the land surface long enough to be capable of supporting aquatic or hydrophytic vegetation and which has soils indicative of wet conditions.

Section 23.32(1), although not controlling here, is referenced in the recent wetlands act, ch. 330, Laws of 1981, effective May 7, 1982.

channels of streams and rivers and the open water areas of lakes and reservoirs are not included in this definition.

The question whether a project area is a wetland under the above definition presents a mixed question of fact and law. Ecologically salient characteristics of the site are factual matters. Whether factual findings fulfill the applicable definition of "wetlands," however, is a question of law. *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 115–16, 287 N.W.2d 763, 768 (1980).

It is important to articulate what is not at issue. Houslet challenges neither the examiner's findings of fact nor the department's authority to regulate wetlands. He does not contend that the regulation in question was beyond the department's authority to promulgate nor that it was promulgated improperly. He agrees that the entire project area was below the ordinary high water mark (OHWM) of the lake. He does not dispute that the OHWM marks the boundary between lake bed titled in the state, which is subject to state regulation in the public interest, and property titled in private owners.

Houslet's contention on appeal is that the project area cannot simultaneously constitute both a lake bed and a wetland. Because the entire area in question is below the OHWM, he contends, it must be entirely a lake bed no portion of which is governed by the regulations applicable to wetlands.

Because no facts are in dispute and the controversy concerns only the conclusions which are to be drawn from undisputed facts, we review the matter *ab initio* as a question of law. We conclude that the department properly applied its wetlands regulation in denying the dredging contract.

Houslet cites no support for his contention that lake beds and wetlands are mutually exclusive categories. Neither *Diana Shooting Club v. Husting,* 156 Wis. 261,

145 N.W. 816 (1914), nor *Thomson v. Public Service Comm.*, 241 Wis. 243, 5 N.W.2d 769 (1942), provide any support for his position.

*Diana Shooting Club*, a trespass action, held that a boggy bay area of a river which was navigable during only part of the year, and which was covered with tall vegetation growing from the bottom of the water at a height of four or five feet above its surface, was a part of the public waterway open to public use. In determining that the defendant hunter was not guilty of trespassing on the plaintiff's private land adjoining the waterway, the court said:

> Hunting on navigable waters is lawful when it is confined strictly to such waters while they are in a navigable stage, and between the boundaries of ordinary high-water marks. When so confined it is immaterial what the character of the stream or water is. It may be deep or shallow, clear or covered with aquatic vegetation. 156 Wis. at 272, 145 N.W. at 820.

*Diana Shooting Club* thus supports the proposition that the public interest in and title to the navigable waters in this state attaches to more than the open and perpetually navigable waters contained in lakes, rivers and streams. It extends to areas covered with aquatic vegetation within the ordinary high water mark of the body of water in question. *See also State v. McDonald Lumber Co.*, 18 Wis. 2d 173, 176, 118 N.W.2d 152, 153 (1962).[5]

*Thomson*, 241 Wis. at 248, 5 N.W.2d at 771, upon which Houslet primarily relies, accepted the definition of "surface waters" set forth in *Restatement of Torts*, sec. 846 at 333, and comment *b*,[6] as follows:

---

[5] The still-accepted definition of the ordinary high water mark is contained in *Diana Shooting Club v. Husting*, 156 Wis. 261, 272, 145 N.W. 816, 820 (1914).

[6] The definition in *Restatement, Torts* remains substantially the same as the current definition in *Restatement (Second) of Torts* sec. 846 (1979).

"The term 'surface waters,' . . . comprehends waters from rains, springs or melting snow which lie or flow on the surface of the earth *but which do not form part of a watercourse or lake.*"

. . . .

"The term 'surface waters' is used to describe those casual waters which accumulate from natural sources *and which have not yet* evaporated, been absorbed into the earth or *found their way into a stream or lake* . . . ." [Emphasis supplied.]

As we understand the respondent's position, it is that because the department defines wetlands as "characterized by surface water," and because the above definition of "surface waters" excludes lake water, the project area cannot be a wetland. Because all of it is under the OHWM, he urges, it is thus a part of the lake *rather than* a wetland. We reject the position urged.

The *Restatement* definition applies to torts involving interference with the use of water. *Thomson* used the definition in the context of an action to require a railroad to construct a culvert. Both these situations are distinguishable from that here: an administrative definition of wetlands.

As appellant points out, the term "surface water" is used more broadly than the *Restatement* definition in a variety of Wisconsin statutes. Section 144.01(19), Stats., lists it among the "waters of the state." The same is done in sec. 147.015(13), Stats. Section 144.025(1), divides "all waters of the state" into ground water and surface water.

The Wisconsin Administrative Code also defines the term in a broad fashion. In Wis. Admin. Code, sec. NR 101.03(4), relating to water and air pollution, the following definition is given:

"Surface water" means those portions of Lake Michigan and Lake Superior within the boundaries of Wisconsin, all lakes, bays, rivers, streams, springs, ponds,

impounding reservoirs, marshes, water courses, drainage systems and other surface water, natural or artificial, public or private within the state or under its jurisdiction, except those waters which are entirely confined and completely retained upon the property of a facility.

And in Wis. Admin. Code, sec. NR 102.01(7), relating to water quality standards for Wisconsin surface waters:

"Surface waters" means all natural and artificial named and unnamed lakes and all naturally flowing streams within the boundaries of the state, but not including cooling lakes, farm ponds and facilities constructed for the treatment of wastewaters (the term waters as used in this chapter means surface waters.)

Under all these definitions surface waters and lakes are not mutually exclusive. These definitions, and not the *Thomson* definition, control. Thus, the department properly applied its wetlands regulation to the project area which was undisputedly characterized in part by surface waters. Its application of that regulation was not in conflict with the broad provisions of sec. 30.20, Stats. The regulation is a narrow standard applicable to a precise kind of lake bed subject to the department's control in the public interest under the statute. The trial court was in error when it concluded to the contrary.

The question remains whether the department's failure to make specific findings regarding the potential water pollution effects of the proposed dredging project as required under *Reuter v. Department of Natural Resources,* 43 Wis. 2d 272, 168 N.W.2d 860 (1969), requires a remand to the department. We conclude that it does not, although we reject the department's contention that *Reuter* is inapplicable to the present case.

It is true, as the department contends, that *Reuter* involved a dredging application which was granted, where-

as in this case the application was denied. The department contends that *Reuter* should be confined to its facts, and urges that findings with respect to the probable water pollution effects would be mere surplusage in cases where an application is denied on other grounds. We disagree.

*Reuter* held that in determining whether to grant a dredging contract in the public interest under sec. 30.30 (2) (c), Stats., the department was required to make a specific finding as to the effect of the proposed project upon water pollution. The court's language is broad, and admits of no exception.

> Requiring the department to make a specific finding of fact as to effect of water pollution upon dredging recognizes the importance assigned to pollution by the legislature but leaves to the department the weighing of this factor along with others involved.
> Requiring that a specific finding be made assures the parties concerned and affected that the legislatively required consideration of water pollution as a major factor in the decision-reaching process has been complied with. *Such specific finding is also a substitute for conjecture and speculation should the department decision be brought to the courts for review.*
> The legislature has provided for specific findings in hearings of this type. Where the pollution aspect has been given the importance that the legislature has attached to it, we hold that a specific finding covering the pollution aspect of the petition *must* be made. [Emphasis supplied, footnote omitted.]

*Reuter*, 43 Wis. 2d at 277–78, 168 N.W.2d at 862.

There is a purpose to be served in requiring a specific water pollution finding even when an application is denied on other grounds, because the denial on those grounds might be overturned on judicial review. Requiring a pollution finding in all cases would avoid the necessity of a remand to the department for the missing findings, in that event, and the probability of another

judicial review thereafter. This would effect a savings in time and expense for litigants, the department, and reviewing courts alike.

We therefore hold that a water pollution finding is required in all cases, regardless whether a dredging contract is granted or is denied for reasons unrelated to water pollution. A remand to the department is not necessary in this case, however, because we have concluded that the contract at issue was properly rejected under the wetlands regulation. The order of the trial court must therefore be reversed.

*By the Court.*—Order reversed.