CITIZENS FOR U, INC., George Mead and Susan Feith, Petitioners-Appellants,

Mary LAMAR and Michael Price, Petitioners,

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES, Classic Development Corp. of Plover, Biron Licensee Group, LLC, Wood County, Consolidated Water Power Company and Village of Biron, Respondents-Respondents.

Court of Appeals

*No. 2008AP2537. Submitted on briefs October 19, 2009 —Decided January 21, 2010.*

2010 WI App 21

(Also reported in 780 N.W.2d 194.)

768

770

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Lawrie J. Kobza* and *Richard L. Bolton* of *Boardman, Suhr, Curry & Field, LLP*, Madison.

On behalf of the respondent-respondent, Wisconsin Department of Natural Resources, the cause was submitted on the brief of *Diane L. Milligan*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the respondents-respondents, Classic Development Corp. of Plover, Biron Licensee Group, LLC, and Wood County, the cause was submitted on the brief of *Charles V. Sweeney* and *Lori M. Lubinsky* of *Axley Brynelson, LLP*, Madison.

On behalf of the respondent-respondent, Consolidated Water Power Company, the cause was submitted on the brief of *Douglas B. Clark, Michael S. Heffernan*, and *Trevor D. Stiles* of *Foley and Lardner, LLP*, Madison.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. VERGERONT, J. Citizens for U, Inc., challenges the Department of Natural Resources' (DNR) decision approving the petition to abandon a portion of County Highway U that provides public access to the Wisconsin River. Citizens for U contends the replacement public access is not equivalent or superior to that abandoned and therefore DNR's own regulations prohibit approving the petition. The circuit court affirmed DNR's decision and Citizens for U appeals.

771

¶ 2. We conclude Citizens for U filed a timely notice of appeal from the circuit court's order affirming the DNR decision, as modified after remand, and we therefore have jurisdiction to resolve all the issues Citizens for U raises on appeal. For the reasons we explain below, we decline to address Citizens for U's arguments based on the definitions in WIS. ADMIN. CODE § NR 1.91(2)(b) and (g) (Nov. 2008).[1] We conclude DNR reasonably construes and applies § NR 1.92(2)(a) and (3) based on substantial evidence and its decision does not violate the public trust doctrine. We therefore affirm.

## BACKGROUND

¶ 3. The portion of Highway U that is the subject of this dispute runs along the shoreline of the Wisconsin River at the Biron Flowage in Wood County and provides public access to 5093.1 feet of unimproved shoreline and 5.8 acres of associated upland. Approximately forty percent of this stretch of shoreline is within the highway right-of-way.[2] On the rest of this stretch of shoreline there is upland between the highway right-of-way and the ordinary high water mark that is owned by Consolidated Water Power Company.

¶ 4. Consolidated operates a hydroelectric project under a license issued by the Federal Energy Regulatory Commission (FERC), and FERC regulates the

---

[1] All references to the Wisconsin Administrative Code are to the November 2008 version unless otherwise noted.

[2] According to the findings of fact in the DNR decision, for 1981.2 feet of the 5093.1 feet of shoreline, the highway and associated right-of-way extend below the ordinary high water mark of the flowage. This results in areas where the road lies directly adjacent to the water and areas where the right-of-way provides a "small sliver of land" between the road and water, constituting 3.002 acres of upland.

management and use of the lands within the project boundary. These lands include the Biron Flowage and the disputed portion of Highway U. Under this license, Consolidated has been required to keep its land on the shoreline open to public access, and there is a minimally developed public boat launch. On part of this land FERC has allowed Consolidated to issue annual non-exclusive licenses to private parties to build residences, docks, piers, and boat storage facilities. These licensees have formed Biron Licensee Group, LLC.

¶ 5. In 2004 Consolidated, Biron Licensee Group, and Classic Development Corporation entered into an agreement to exchange land, subject to DNR and FERC approval.[3] Biron Licensee Group and Classic own land along the disputed portion of Highway U on the side opposite the shoreline. Under the agreement the Biron Licensee Group members acquire ownership of the property they have leased from Consolidated, Consolidated acquires 47 acres of land from Classic, and Classic acquires shoreline property from Consolidated and property from the Biron Licensee Group and is to construct a residential development on several parcels.

¶ 6. The agreement is contingent upon moving approximately one mile of Highway U inland, with the relocated section to be at a distance of between 1000 and 1300 feet from the shoreline.[4] Because this stretch of the highway provides public access to the Wisconsin River, DNR approval is required under WIS. STAT.

---

[3] FERC's approval is not at issue on this appeal.

[4] The DNR decision does not make a finding on the distance of the relocated section from the existing highway or the shoreline. We use the distance described by Citizens for U, based on one of its exhibits at the hearing, because the respondents do not dispute this distance.

§ 66.1006 (2007–08).[5] Regulations promulgated pursuant to this statute provide that DNR may grant a petition to abandon only if it finds that "the access proposed to be abandoned does not contribute to the quality or quantity of public access on the body of water" or if "[a]ny access sites . . . proposed to be abandoned or discontinued [are] replaced prior to granting the petition." WIS. ADMIN. CODE § NR 1.92(2). DNR is authorized to "order conditions of approval . . . related to assurance of protection of the interest of the public in the body of water." § NR 1.92(3).

¶ 7. Wood County filed an application with DNR requesting permission to abandon this portion of Highway U. The agreement itself as well as additional proposals contain provisions for replacing the public access that would be lost if this portion of the highway is abandoned. Citizens for U, a nonprofit Wisconsin corporation, and interested individuals (collectively, "Citizens for U") opposed the petition and contended that the proposed replacement public access was not comparable to the existing public access.

¶ 8. DNR referred the matter to the Division of Hearings and Appeals, pursuant to WIS. STAT.

---

[5] WISCONSIN STAT. § 66.1006 provides:

> Department of natural resources approval of discontinuance. No resolution, ordinance, order, or similar action of a town board or county board, or of a committee of a town board or county board, discontinuing any highway, street, alley, or right-of-way that provides public access to any navigable lake or stream shall be effective until such resolution, ordinance, order, or similar action is approved by the department of natural resources.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

774

§ 227.43(1)(b).[6] After a hearing, the Division issued a decision allowing abandonment as long as twenty-seven specified conditions were met and subject to the items of replacement public access enumerated in the findings of fact. The decision first concludes that the portion of the highway proposed for abandonment contributes to the quantity and quality of public access to the Wisconsin River, an issue on which there is no dispute. The decision next concludes that the proposed replacement public access, together with the conditions and additions imposed in the decision, constitute public access that is equivalent or superior in terms of quantity and quality to the public access provided by the portion of the highway that would be abandoned. Pursuant to Wis. Stat. § 227.46(3)(a) and Wis. Admin. Code § NR 2.155(1), the decision of the Division became the final decision of DNR.[7]

¶ 9. Citizens for U filed a petition under Wis. Stat. § 227.52 for review in the circuit court, contending the

[6] Wisconsin Stat. § 227.43(1)(b) provides: "Division of hearings and appeals. The administrator of the division of hearings and appeals in the department of administration shall ... [a]ssign a hearing examiner to preside over any hearing of a contested case which is required to be conducted by the department of natural resources and which is not conducted by the secretary of natural resources."

[7] Wisconsin Stat. § 227.46(3) provides: "With respect to contested cases except a hearing or review assigned to a hearing examiner under s. 227.43(1)(bg), an agency may by rule or in a particular case may by order: (a) Direct that the hearing examiner's decision be the final decision of the agency . . . ."

Wisconsin Admin. Code § NR 2.155(1) provides: "Decisions in contested cases. The administrative law judge shall prepare findings of fact, conclusions of law and decision subsequent to each contested case heard. Unless the department petitions for judicial review as provided in s. 227.46(8), Stats., the decision shall be the final decision of the department . . . ."

replacement public access was not comparable to the existing public access and there were uncertainties concerning aspects of the replacement public access. The circuit court rejected most of Citizens for U's arguments, but it agreed that three of the conditions were invalid because they permitted negotiation and revision after the approval. The court remanded to the Division for further consideration on this point.

¶ 10. On remand before the Division, the parties, except Citizens for U, submitted proposals to eliminate one of the identified conditions and to revise the others. The Division issued a second decision, finding that the proposed revisions, along with two changes to other conditions, were reasonable and necessary to meet the concerns of the circuit court and that, as modified, the replacement public access was equivalent or superior within the meaning of WIS. ADMIN. CODE § NR 1.92(3). Like the earlier decision, this decision became the final decision of DNR. *See* WIS. STAT. § 227.46(3)(a) and WIS. ADMIN. CODE § NR 2.155(1).

¶ 11. Following remand, the circuit court affirmed this DNR decision with a slight modification and, upon the stipulation of all parties, deleted a condition that had not been the subject of the remand. With these changes, the court affirmed the order permitting abandonment.

## DISCUSSION

¶ 12. On appeal Citizens for U's challenge focuses on one component of the replacement public access approved by DNR—the Kubisiak Islands. Citizens for U contends that this property does not constitute a proper replacement component under the applicable definitions in DNR's own regulations. It also contends that

DNR's decision to accept it as a replacement component is unreasonable and is a violation of the public trust doctrine. According to Citizens for U, if the Kubisiak Islands were properly excluded from consideration, the remaining public access would plainly not be equivalent or superior to the abandoned public access. Before addressing each of these issues, we address Consolidated's argument that we do not have jurisdiction because Citizens for U's appeal of the circuit court's order was not timely.

I. Timeliness of Appeal

¶ 13. Consolidated contends that the issue of the Kubisiak Islands as an acceptable component of the replacement public access was resolved by the circuit court in its order remanding to the Division, that it was a final order, and that Citizens for U did not appeal that order within the statutory time period. According to Consolidated, the only issues potentially before us on this appeal are the modifications the circuit court made after remand, and Citizens for U is not challenging those. We disagree with Consolidated for the following reasons.

¶ 14. In order to determine whether an appeal is timely filed, we must identify the "final judgment or order," because the date of that determines the time for appeal.[8] WISCONSIN STAT. § 808.03(1) provides in part:

> Appeals as of right. A final judgment or a final order of a circuit court may be appealed as a matter of right to

---

[8] WISCONSIN STAT. § 808.04(1) provides:

Initiating an appeal. An appeal to the court of appeals must be initiated within 45 days of entry of a final judgment or order appealed from if written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order as

the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties . . . .

■

¶ 15. The supreme court held in *Wambolt v. West Bend Mutual Insurance Co.*, 2007 WI 35, 299 Wis. 2d 723, 728 N.W.2d 670, that, to avoid confusion, final orders and final judgments must state they are final for purposes of appeal. *Id.*, ¶ 44. There need not be a "particular phrase or magic words," but "the document must . . . make clear, with a statement on its face, that it is the document from which appeal may follow as a matter of right under § 808.03(1)." *Id.*, ¶ 45. "[A]bsent explicit language that the document is intended to be the final order or final judgment for purposes of appeal, appellate courts should liberally construe ambiguities to preserve the right of appeal." *Id.*, ¶ 46.

¶ 16. The *Wambolt* rule applies to final orders and judgments entered after September 1, 2007, *id.*, ¶ 49, and therefore applies to the circuit court's January 7, 2008, order remanding to the Division to consider the three identified conditions. That order does not contain any language conveying that an appeal as of right can be taken from it. In contrast, the circuit court's order after the hearing following the remand, entered on August 29, 2008, states: "This is a final judgment for the purpose of filing an appeal." Not only does this order resolve the issues regarding the conditions identified for remand, but, based on the parties' stipulation, it makes another modification regarding a condition that is not identified in the remand order.

provided in s. 806.06(5), or within 90 days of entry if notice is not given, except as provided in this section or otherwise expressly provided by law. Time limits for seeking review of a nonfinal jugment or order are established in s. 809.50.

¶ 17. Consolidated argues that, despite the absence of a clear statement—or any statement—that the January 2008 remand order is final for purposes of an appeal, it is nonetheless final because it is settled law that a remand order to an administrative agency is a final order. According to Consolidated, there is therefore no ambiguity to construe in favor of preserving Citizens for U's right to appeal.

¶ 18. The cases on which Consolidated relies are pre-*Wambolt* and factually distinguishable. In *Bearns v. DILHR*, 102 Wis. 2d 70, 73–76, 306 N.W.2d 22 (1981), the court held that a circuit court judgment setting aside an administrative agency order and remanding the matter for further proceedings, and a circuit court order in another case reversing the agency order and remanding the case to the agency for further proceedings were both final judgments or orders under Wis. Stat. § 808.03(1). The court reasoned that "litigation" in the statute refers only to litigation in the court, not to administrative proceedings, and upon setting aside the administrative order and remanding to the agency, the circuit court has disposed of the entire matter in litigation. Consolidated also relies on two cases that cite *Bearns*, without discussion, for the proposition that a circuit court order remanding to the administrative agency constitutes a final order appealable as of right: *Fox v. DHSS*, 112 Wis. 2d 514, 517 n.1, 334 N.W.2d 532 (1983), and *Houslet v. DNR*, 110 Wis. 2d 280, 284, 329 N.W.2d 219 (Ct. App. 1982). In none of these cases is there an indication that the circuit court intended to conduct further proceedings on the matter *in the circuit court.*

¶ 19. In contrast, in this case the circuit court did not reverse or set aside the administrative order but instead remanded for consideration on very specific issues, and the order plainly contemplates further liti-

gation in the circuit court on those issues. The order states that, after consideration by the administrative agency of those issues, there is to be a "return to this court not later than 90 days" from the date of the order, and the order sets a hearing for a date soon thereafter.[9]

¶ 20. Whether the analysis of the fact situations in the above cases might be different in light of *Wambolt* is an issue we need not address. In none of the cases is the intent of the circuit court to conduct specific additional proceedings *in the circuit court* plainly set forth in the remand order, as it is here.

¶ 21. Consolidated is correct that the circuit court order reversing an assessment and remanding to the board in *Steenberg v. Town of Oakfield*, 157 Wis. 2d 674, 676–677, 461 N.W.2d 148 (Ct. App. 1990), did have language indicating further circuit court action and we nonetheless concluded the order was final and appealable under *Bearns*. The language—"the court shall retain jurisdiction until the Board has determined an assessment in accordance with this order"—essentially repeated a portion of the statute on assessment reviews. *Id.* at 675. We concluded that this language was included in the statute for a reason that did not appear to relate to finality for purposes of appellate review and, because "no court litigation [was] pending, the order [was] final." *Id.* at 676. In contrast, in the case before us, the language of the circuit court's order contemplating further proceedings is not a formality. The circuit court did not reverse the agency decision and it sched-

---

[9] Consolidated is not arguing that the circuit court did not have the authority under Wis. Stat. ch. 227 to remand for consideration of the specified issues on the terms contained in the remand order. Indeed, it appears that no party objected to the court doing so. Accordingly, the issue of the circuit court's authority to remand on the terms it did is not before us.

uled a hearing to resolve any objections to the agency's disposition of the identified issues on remand.

■

¶ 22. We conclude that the January 7, 2008, remand order is not a final order within the meaning of Wis. Stat. § 808.03(1). It does not contain an explicit statement adjudicating the entire matter in litigation as to any party and it schedules a hearing upon "return" from the agency for the purpose of reviewing the issues identified for consideration on remand. The final order is the one entered on August 29, 2008, after the hearing after remand. This order contains the statement: "This is a final judgment for the purpose of filing an appeal." Because the August 29, 2008, order is the final one, not the January 7, 2008, order, Citizens for U may challenge on this appeal all rulings the circuit court made before issuing the August 29, 2008, order. *See* Wis. Stat. § 809.10(4) (An appeal of a final order brings before this court all non-final rulings.).

II. Definitions of "Access Site" and "Public Access" in Wis. Admin. Code § NR 1.91(2)(b) and (g)

¶ 23. One component of the replacement public access required by the DNR decision[10] is the Kubisiak Lands, which are located in the Biron Flowage about four miles upstream by watercraft from the portion of Highway U in dispute. The DNR decision finds that the Kubisiak Lands consist of 33,854 feet of "undeveloped pristine shoreline," which includes 217 feet of roadside shoreline access adjacent to Ole River Road, 18,573 feet

---

[10] We use the term "the DNR decision" to describe the decision issued by the Division on November 29, 2006, as modified by the decision issued by the Division on April 3, 2008, both adopted by the DNR.

of island shoreline, and 15,064 feet of shoreline on peninsulas. The DNR decision also finds that the Kubisiak Lands consist of 48.76 acres of upland and 108.22 acres of flooded land.

¶ 24. Citizens for U contends that the Kubisiak Islands—and by this they evidently are referring only to the *islands* of the Kubisiak Lands—may not be considered as part of the requisite replacement public access because the islands cannot be reached by motor vehicle but only by boat. According to Citizens for U, the definitions in WIS. ADMIN. CODE § NR 1.91(2)(b) and (g) of "access site" and "public access" require that replacement public access be public access to the river by motor vehicle. The respondents counter that we should not address this issue because Citizens for U is raising it for the first time on this appeal.

¶ 25. We conclude that Citizens for U did not raise this argument before the administrative agency and we therefore decline to address it. In explaining this conclusion, we discuss the regulatory scheme and our standard of review and then examine the administrative proceedings.

¶ 26. WISCONSIN ADMIN. CODE § NR 1.92 governs "[a]bandonment of access." Subsection (1) provides the procedure for notice and a hearing regarding proposals subject to WIS. STAT. § 66.1006 to "abandon . . . any highway . . . which provides public access to a navigable waterway." Subsection (2) specifies the standards for granting these proposals:

> (2) Findings for granting. The department may grant the petition to abandon or discontinue the public access only if:

(a) Any access sites or part thereof proposed to be abandoned or discontinued is replaced prior to granting the petition; or

(b) The department finds that the access proposed to be abandoned does not contribute to the quality or quantity of public access on the body of water.

Subsection (3) authorizes DNR to propose conditions as follows:

(3) Approval conditions. The department may order conditions of approval including, but not limited to, a showing of financial capability of the petitioner to provide and maintain an equivalent or superior replacement public access site, and other conditions related to assurance of protection of the interest of the public in the body of water.[11] [Footnote added.]

¶ 27. The definitions of "access site" and "public access" on which Citizens for U rely are contained in Wis. Admin. Code § NR 1.91, entitled "[p]ublic boating access standards":

"Access site" means an area of land providing public boat access or carry-in access, which provides parking for vehicles with or without trailers.

---

[11] Although the "equivalent or superior replacement" language is from the clause modifying "a showing of financial capability" in Wis. Admin. Code § NR 1.92(3), the DNR decision uses this language to define the standard for the replacement public access. For example, the decision frames the issue as: "Is the proposed replacement access equivalent or superior in terms of quantity and quality to the public access provided by the portion of [Highway] U proposed for abandonment on the Wisconsin River?" No party contends that the replacement public access need not be "equivalent or superior" to the public access on the portion of Highway U in dispute. Accordingly, we use this same formulation in describing the requisite replacement public access.

. . . .

> "Public access," for purposes of s. NR 1.92, means any site providing motor vehicle access to ice-bound waters, public boating access or carry-in access.

§ NR 1.91(2)(b) and (g). Section NR 1.91(2) provides that the definitions listed there apply to §§ NR 1.90 to 1.93.

¶ 28. According to Citizens for U, when these definitions are used in WIS. ADMIN. CODE § NR 1.92(2)(a), a site provides replacement public access "only if (a) it provides for motor vehicle access and parking; and (b) it provides access from the motor vehicle to the water." Therefore, Citizens for U contends, the Kubisiak Islands cannot as a matter of law be considered replacement public access under § NR 1.92, and DNR's decision must be reversed because of this erroneous interpretation and application if its regulations.

¶ 29. Although the interpretation of an administrative regulation presents a question of law, an agency's interpretation of its own regulation is controlling unless it is plainly erroneous or inconsistent with the language of the regulation. *See DOR v. Menasha Corp.*, 2008 WI 88, ¶¶ 44, 53, 311 Wis. 2d 579, 754 N.W.2d 95. In applying controlling weight deference, we ask "whether the agency's interpretation is reasonable and consistent with the meaning or purpose of the regulation." *Id.*, ¶ 54 (citation omitted). If it is, we do not substitute our view of the law for that of the agency and we uphold its interpretation of its regulation even if an alternative view is as reasonable or more reasonable. *Id.*

¶ 30. Because we are to give controlling weight to DNR's interpretation of its own regulations, our analysis would ordinarily begin with examining the interpre-

tation in the DNR decision given to Wis. Admin. Code § NR 1.92(2)(a) in light of the definitions in § NR 1.91(2)(b) and (g).[12] However, there is no mention of these definitions in the decision. Examining Citizens for U's opening statement at the hearing and its post-hearing brief, we see no mention of these definitions. Indeed, its post-hearing brief argues for a broad defini-tion of public access, citing to § NR 1.90, "[p]ublic access policy for waterways,"[13] and to a DNR decision in another matter for the proposition that "sec. NR 1.92, relating to 'abandonment of access,' is broader in scope than the 'boating access' addressed in sec. [NR] 1.91, Wis. Admin. Code." *In the Matter of the Petition of the Town of Oshkosh, to Discontinue a Public Right-of-Way to Lake Winnebago*, Case No. IH-99–04, Order at 5 (DHA, June 7, 1999). Citizens for U *did* argue that the

---

[12] In an appeal involving an administrative agency's deci-sion, this court reviews the decision of the administrative agency, not that of the circuit court. *DOR v. Menasha Corp.*, 2008 WI 88, ¶ 46, 311 Wis. 2d 579, 754 N.W.2d 95.

[13] Wisconsin. Admin. Code § NR 1.90(1) provides:

Public access policy for waterways. It is the goal of the state of Wisconsin to provide, maintain and improve access to the state's navigable lakes, rivers and streams for the public. Public access facilities shall allow for public rights of navigation, related incidental uses and other uses which are appropriate for the waterway. Waterway uses shall be equally available to all water-way users and include enjoyment of natural scenic beauty and serenity. These public rights and uses may be provided by any combination of publicly and privately owned access facilities which are available to the general public free or for a reasonable fee. The department, alone or in cooperation with local govern-ment, shall exercise its management and regulatory responsibili-ties to achieve this goal and to assure that levels and types of use of navigable waters are consistent with protection of public health, safety and welfare, including protection of natural re-sources.

Kubisiak Islands did not qualify as replacement public access, but that argument was based on a definition for replacement properties that it took from the statute on replacement property in condemnation proceedings. *See* Wis. Stat. § 32.19(2)(b)-(d). The DNR decision does not adopt this approach, and the circuit court rejected Citizens for U's argument that DNR should have done so. We address this argument in the next section.

¶ 31. In order to preserve an issue for judicial review, a party must raise it before an administrative agency, and ordinarily a reviewing court will not address an issue not properly presented to the administrative agency. *Bunker v. LIRC*, 2002 WI App 216, ¶ 15, 257 Wis. 2d 255, 650 N.W.2d 864. Although we have the authority to address an issue not raised before the administrative agency, whether we choose to do so depends upon a number of factors, including how important it is to the court's review that the agency first have an opportunity to address the issue. *Id.*, ¶¶ 15–18.

¶ 32. In this case the interpretation of the regulations proposed by Citizens for U raises a number of questions. The definition of "public access" in Wis. Admin. Code § NR 1.91(2)(g) does not necessarily mean, as Citizens for U contends, access by motor vehicle. The definition can also arguably be read to mean that the "motor vehicle access" is to "ice-bound waters" and that the other forms of access that make up "public access" are "public boating access" and "carry-in access." § NR 1.91(2)(g). The further definition of "public boating access" arguably supports this alternative reading: "any site or combination of sites including private sites meeting the provisions of sub. (7) at which the general public may gain legal access to a body of water by the process of launching a boat." § NR 1.91(2)(h). In addi-

tion, given the use of "public access site" in § NR 1.92(3), in addition to "access site" and "public access" in § NR 1.92(2), it is not clear how these three terms are intended to relate to each other in § NR 1.92. Finally, we note that § NR 1.90 indicates a broader concept of "public access" than that in § NR 1.91(2)(g), even though § NR 1.91(2) says that the definitions there apply in §§ NR 1.90 to 1.93.

¶ 33. At the administrative hearing DNR witnesses testified on the process for evaluating whether the proposed replacement public access is equivalent or superior to the public access sought to be abandoned, but they did not focus on the definitions of "access site" and "public access" that Citizens for U now asserts are dispositive. And, as noted above, the administrative decision does not address them.

¶ 34. We also consider that, if "access site" in Wis. Admin. Code § NR 1.92(2)(a) has the meaning given in § NR 1.91(2)(b), fact-finding is required on what portion of the disputed portion of the highway is "an area of land providing public boat access or carry-in access, which provides parking for vehicles with or without trailers." *See* § NR 1.92(2)(a). Is the minimally developed public boat launch the only "access site" or are there others? Or, as Citizens for U appears to be contending, is the entire length of the disputed highway portion an "access site" because there can be parking on the right-of-way?

¶ 35. Because we do not have a DNR decision interpreting its regulations in light of the definitions Citizens for U now relies upon and because of the need for additional fact-finding if Citizens for U is correct, we decline to address whether DNR erred by not applying

787

the definitions in W$_{IS.}$ A$_{DMIN.}$ C$_{ODE}$ § NR 1.91(2)(b) and (g) to § NR 1.92(2)(a).[14]

[14] In Citizen for U's reply brief, in the context of arguing that the definitions of "access site" and "public access" in W$_{IS.}$ A$_{DMIN.}$ C$_{ODE}$ § NR 1.91(2)(b) and (g) apply, it contends that the plain language of § NR 1.92(2)(a) requires that "[a]ny access sites . . . proposed to be abandoned . . . [be] replaced *prior* to granting the petition." (Emphasis added.) Citizens for U asserts this did not happen here. It is not clear to us whether this is simply part of the argument that the definitions in § NR 1.91(2)(b) and (g) control or whether Citizens for U is making a separate argument that the replacement public access needs to be physically in place before the permit can be granted. If the former is the case, we do not address this argument for the reasons we explain above in Section II. If the latter, we do not address it because it appears inconsistent with the position Citizens for U took before the administrative agency.

Both before the administrative agency and in the circuit court, Citizens for U asserted that "replaced prior to" in W$_{IS.}$ A$_{DMIN.}$ C$_{ODE}$ § NR 1.92(2)(a) "probably does not mean that, in all circumstances, each aspect of the proposed replacement access must be physically in place before the petition for abandonment may be granted, [but this] language should reasonably be interpreted to require that the petitioner know, and that the DNR review and approve, plans of the forms of replacement access before granting the petition . . . ." In both forums Citizens for U argued that certain of the conditions were too indefinite to satisfy this interpretation. However, it did not contend that the abandoned public access had to be physically replaced before the petition could be granted. If this is what Citizens for U is arguing now, we decline to address this argument because it was not raised before the administrative agency and appears to be inconsistent with the position advanced there. (As already noted, the circuit court agreed that some of the conditions were too indefinite and remanded to the Division for this reason. We do not understand Citizens for U to be arguing on this appeal that particular conditions imposed in the DNR decision are too indefinite.)

III. Reasonableness of Kubisiak Islands as a Component of Replacement Public Access

¶ 36. Citizens for U contends that it is unreasonable to accept the Kubisiak Islands as a component of replacement public access because they are not reasonably similar to the public access afforded by the disputed portion of the highway, they are not functionally equivalent, and they are not in reasonable proximity. As noted earlier, in the administrative proceeding and circuit court Citizens for U based its construction of "replacement" on statutory requirements in condemnation proceedings. On appeal they do not refer to that statute but continue to advance the substantive requirements derived from that statute as necessary for replacement under Wis. ADMIN. CODE § NR 1.92(2)(a).

¶ 37. Because Citizens for U is challenging DNR's construction and application of Wis. ADMIN. CODE § NR 1.92(2)(a), we do not inquire whether its proposed construction or application is as or more reasonable than that of DNR. *Menasha Corp.*, 311 Wis. 2d 579, ¶ 54. Rather, we begin with DNR's construction and application and inquire whether it is reasonable and consistent with the meaning or purpose of the regulations. *Id.* In addition, we accept all factual findings if they are supported by substantial evidence—that is, such relevant evidence that a reasonable mind might find sufficient to support a conclusion. *Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 148, 588 N.W.2d 667 (Ct. App. 1998). Applying this standard of review, we conclude that DNR's decision reasonably interprets and applies its regulations and that its decision is supported by substantial evidence.

789

¶ 38. The DNR decision credits the testimony of DNR employees who considered the abandonment proposal and compared the quantity and quality of the existing public access with the quantity and quality of the proposed replacement public access. One of the DNR employees stated that quality includes "the uses of an access—walking/driving along the shore, viewing scenic beauty, shore-fishing, entry to the waterway for boating, skiing, fishing, ice fishing, swimming, snowmobiling, etc.—and any amenities (piers, boat ramps, trails, adequate parking, viewing corridors, etc.) or other factors (e.g., topography) associated with the access that facilitate or hamper such uses." The approach of the DNR employees, adopted in the decision, was to determine whether, taken as a whole, the *total* replacement public access is at least equivalent to the total existing public access sought to be abandoned.

¶ 39. The evident purpose of WIS. ADMIN. CODE § NR 1.92(2) and (3) is to ensure that highway abandonments under WIS. STAT. § 66.1006 do not take place unless the benefit of public access to navigable waters that is lost is replaced by public access that is at least the equivalent of what was lost. DNR's construction— comparing as a whole the total lost public access, quantity and quality, to the total replacement public access—is a reasonable construction of these provisions and one that is consistent with the purpose. Nothing in the language of § NR 1.92 requires that DNR consider separately each component of the replacement public access or that DNR further define "replacement public access" as Citizens for U proposes. Assuming without deciding that these alternative approaches are reasonable, that does not make DNR's construction unreasonable.

¶ 40. Applying its construction of Wis. Admin. Code § NR 1.92(2) and (3) to the evidence, the DNR decision concludes that the replacement public access it identifies, as a whole, is equivalent or superior to the public access that will be lost if the petition for abandonment is granted. The DNR decision recognizes that there will be a significant loss of the ability to use this stretch of the highway to view the flowage and that this will have a particular impact on the elderly and disabled. The decision also recognizes that it will be a significant loss if, as contemplated by the parties' agreement, the Biron Licensee Group acquires ownership of the portion now owned by Consolidated and leased to the group—containing 1391 feet of shoreline—and FERC does not require public access, as it does now.[15] However, the decision concludes, these losses are more than made up for by the gains in public access that the decision requires.

¶ 41. The replacement public property required by the decision consists of the Kubisiak Lands, which we have already described, *see supra*, ¶ 23, and improvements along the 3701.2 feet of shoreline that will not become Biron Licensee Groups' private property as follows:

1. A new 47.5–acre green space with 846.7 feet of shoreline and a 30–vehicle parking lot, with a local water ski club's facilities to be relocated to a site within the park; this represents an increase in acreage to the "shoreline associated acreage that will be publicly available";

---

[15] Notably, while the DNR decision recognizes this as a significant loss, it finds that, as a practical matter, the shoreline of this stretch of property "is not conducive to boat launching, mooring, swimming, wading or walking in the water."

2. A new boat launch and parking facility with 129.1 feet of shoreline and space for 100 vehicles, including 80 for vehicles with trailers and 4 for handicapped use;

3. A 1974.4–foot long, 35–foot wide, public access easement that includes a new 10–foot wide paved multipurpose handicapped-accessible recreation trail;

4. A new small park with 239.7 feet of shoreline and .239 acres with a handicapped-accessible fishing and viewing pier and parking;

5. A small parking area on the roadway immediately west of the Wood/Portage County line;

6. At least three public access fishing "bump outs."

¶ 42. The DNR decision finds that, with the relocation of the highway and the above replacement public access, the quality of public access to the river for walking, jogging, rollerblading, bicycling, fishing, boating, waterskiing, windsurfing, scenic viewing, picnicking, and photography is superior to that existing now,[16] and that the concern over access for pleasure driving is "outweighed by the superior access for these other uses." With respect to the limitation on the ability of the elderly and disabled to enjoy scenic viewing of the flowage from a vehicle, the decision finds that there is another stretch of this same highway in the same area that affords this opportunity and that the replacement public access improves access for the disabled and elderly in other ways. Finally, the decision finds that the Kubisiak Lands, with the additional 33,854 feet of shoreline and 48.76 acres of upland, will offset the

---

[16] The decision also finds that the approved replacement public access enhances environmental protection.

future loss of public access if Biron Licensee Group acquires land from Consolidated and is not required by FERC to allow public access. The Kubisiak Lands will also "enhance the environmental and recreational value of the proposed replacement access, and . . . preserve pristine land and aquatic habitat in the Biron Flowage."

¶ 43. The conclusion that the above-described replacement public access, taken as a whole, is equivalent or superior to the public access that will be lost is a reasonable one and supported by substantial evidence. Citizens for U's objections to inclusion of the Kubisiak Islands do not persuade us otherwise. The fact that the Kubisiak Islands can be reached only by boat does not make it unreasonable to include them. For those persons who access them by boat, they make available a new and significant means of enjoying the flowage. In addition, there is substantial evidence that preserving the Kubisiak Lands, which include peninsulas as well as islands containing " 'very high' quality aquatic and terrestrial wildlife habitat," will enhance the public enjoyment of the flowage.

¶ 44. Citizens for U relies on the testimony of DNR employee Bruce Neeb, who did not include the Kubisiak Islands in his comparison of the quantity of public access because they did not provide new access to the water but, rather, new access from the land (the islands) to the water. However, he acknowledged that one could look at this point differently, and, indeed, another DNR employee, Robert Martini, did. Martini testified that in his view the Kubisiak Islands contributed to quantity of the replacement public access. We note that Neeb did consider the Kubisiak Islands as contributing to the quality of public access.

¶ 45. Citizens for U contends that Martini's testimony should be given less weight than Neeb's, but

resolving any dispute between the two witnesses is a role for the fact-finder in the administrative proceeding, not for this court. Moreover, the ultimate decision on the significance of the Kubisiak Islands in the analysis of equivalency is not a factual finding but an application of the regulations, as reasonably construed in the DNR decision, to the factual findings. The DNR decision reasonably determines that the Kubisiak Lands, which include the Kubisiak Islands, are an appropriate and necessary part of the replacement public access, notwithstanding Neeb's opinion that the islands did not contribute to the quantity of public access.

¶ 46. As for the distance to the Kubisiak Islands from the disputed portion of the highway—either four miles by river[17] or twenty miles by road to the Ole River Road access, which permits a shorter trip by water—Citizens for U contends this is unreasonable because it is far beyond the one-half-mile rule of thumb referred to in the *Town of Oshkosh* decision. *Town of Oshkosh*, Case No. IH-99–04, Order at 4. In that case the portion of the road sought to be abandoned was the dead end of the road, which abutted a navigable waterway, and the question addressed was whether there was an alternative public access available. In that context, the decision referred to the testimony of a DNR employee that "DNR considers whether there is an alternative public access available within one-half (1/2) mile of the site proposed to be abandoned. This rule of thumb is guidance and does not have the force and effect of law." *Id.* at 4. The decision found that the only available alternative public access was 1.3 miles away, there was no replacement

---

[17] The evidence shows this takes approximately 25 minutes.

public access contemplated, and it affirmed the DNR's decision denying the petition.

¶ 47. The *Town of Oshkosh* decision does not support applying a one-half-mile rule, even as a "rule of thumb," where the issue is not whether there is an existing alternative public access but, rather, what constitutes a proper component of replacement public access. The Kubisiak Lands are within the Biron Flowage, four miles from the disputed stretch of highway, and this distance does not make it unreasonable for the DNR decision to include them as a component of the replacement public access.

## IV. Public Trust Doctrine

¶ 48. Citizens for U contends that, in concluding that the Kubisiak Islands are a proper component of replacement public access, the DNR decision violates the public trust doctrine because the result is a decrease in public access to navigable waters. We disagree for the following reasons.

¶ 49. The State holds the navigable waters of the State in trust for public use. *See* WIS. CONST. art. IX, § 1; *State v. Town of Linn*, 205 Wis. 2d 426, 442, 556 N.W.2d 394 (Ct. App. 1996). The purpose of the trust includes all public uses of the water, commercial as well as recreational uses. The latter includes "pleasure boating, sailing, fishing, swimming, hunting, skating, and enjoyment of scenic beauty." *State v. PSC*, 275 Wis. 112, 118, 81 N.W.2d 71 (1957).

¶ 50. Citizens for U contends that "access to the water" is "the key to maintaining the public's rights in navigable water," relying on *Town of Linn*, 205 Wis. 2d

at 443. There we concluded that DNR's authority under the public trust doctrine to insure free public access to the waters of the state included the shore, and we affirmed an injunction against municipal ordinances that imposed parking and other restrictions on nonvillage residents at public boat launches. *Id.* at 430–33. In arriving at this conclusion we reasoned that, even if the constitutional provision is solely directed to "navigable waters," the legislature could nonetheless delegate to DNR the authority to regulate the adequacy of public access to those waters because "[t]he general public certainly cannot benefit from the public trust doctrine if it is unable to access the waters." *Id.* at 443. We viewed the statement on public access in WIS. ADMIN. CODE § NR 1.90(1) and the requirements in §§ NR 1.91 to 1.93 as a proper expression of the authority delegated to DNR. *Id.* at 444–45.

¶ 51. In *Town of Linn* we did not purport to direct how DNR should exercise its authority in applying its regulations that relate to public access to navigable waters, and we did not even address what constitutes replacement public access. We have already concluded that DNR reasonably construed and applied WIS. ADMIN. CODE § NR 1.92(2)(a) and (3) based on substantial evidence. There is nothing in *Town of Linn* or the public trust doctrine that would permit us nonetheless to set aside the DNR decision.

¶ 52. Fundamentally, Citizens for U is concerned that this case will set a "troubling precedent" of shoreline roads being lost to private developers. Our review is of this case only, and our standard of review does not permit us to substitute our judgment for that of DNR when it has reasonably construed and applied its own regulations and its decision is supported by substantial evidence.

796

## CONCLUSION

¶ 53. We conclude Citizens for U filed a timely notice of appeal from the circuit court's order affirming the DNR decision, as modified after remand, and we therefore have jurisdiction to resolve all the issues it raises on appeal. For the reasons we explain above, we decline to address Citizens for U's arguments based on the definitions in Wis. Admin. Code § NR 1.91(2)(b) and (g). We conclude DNR reasonably construed and applied § NR 1.92(2)(a) and (3) based on substantial evidence and its decision did not violate the public trust doctrine. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.